In the Matter of JULE FINK, Appellant, against ASHLEY T. COLE et al., Constituting the Racing Commission of the State of New York, et al., Respondents.

In the Matter of JULE FINK, Appellant, against THE JOCKEY CLUB, Respondent. ASHLEY T. COLE et al., Constituting the Racing Commission of the State of New York, Interveners, Respondents.

Argued January 16, 1951; decided March 8, 1951.

*Charles H. Tuttle* and *Bernard Segal* for appellant.  I. Section 7512 of the Unconsolidated Laws, in purporting to delegate to The Jockey Club the power to act as a public officer and to exercise the licensing and taxing power of the State, including the power to forbid the use and enjoyment of property, occupation and liberty, violates the State and Federal Constitutions because government and its licensing power cannot be delegated to The Jockey Club, a private corporation.  Moreover, as a private corporation, the club cannot constitutionally be constituted a public officer.  (*Fox* v. *Mohawk & Hudson Riv. Humane Soc.*, 25 App. Div. 26, 165 N. Y. 517; *Carter* v. *Carter Coal Co.*, 298 U. S. 239; *Schechter Poultry Corp.* v. *United States*, 295 U. S. 495; *State* v. *Crawford*, 104 Kan. 141; *Ames* v.

*Port Huron Log Driving & Booming Co.,* 11 Mich. 139.) II. Section 7512 is also unconstitutional because it empowers The Jockey Club, a private corporation, to exact taxes and excises in unstated amounts from the applicant owners, trainers and jockeys, and to use proceeds therefrom for its own purposes. It also is unconstitutional as a delegation of the power to " fix " the rates of taxes or excises on owners, trainers and jockeys, and therefore also to fix the taxing policy of the State. It also is unconstitutional as an appropriation of an annual " contribution " of $15,000 to The Jockey Club for a longer period than two years. (*Gautier* v. *Ditmar,* 204 N. Y. 20; *Fox* v. *Mohawk & Hudson Riv. Humane Soc.,* 25 App. Div. 26, 165 N. Y. 517; *People ex rel. Einsfeld* v. *Murray,* 149 N. Y. 367; *Matter of Mollenhauer,* 257 App. Div. 286; *Franc* v. *Davidson,* 155 Misc. 382; N. Y. Const., art. VII, §§ 7, 8.) III. As an attempted delegation of legislative power, the provision in section 7512 of the Unconsolidated Laws that " for the purpose of maintaining a proper control over race meetings ", The Jockey Club may grant or refuse licenses to owners, is void, illegal and unconstitutional in that it prescribes no conditions at all for the granting or refusal of such licenses, and in that it prescribes no stated, clear and ascertainable standards and requirements for controlling the action and determination of this private corporation, or for protecting the civil rights and property rights of the owner. Moreover, since this plenary delegation is to a private corporation which has, and the members and officers of which also have, private and pecuniary interests, nonclub members are thereby denied due process of law and the equal protection of the laws. (*Matter of Merritt* v. *Swope,* 267 App. Div. 519; *Darweger* v. *Staats,* 267 N. Y. 290; *People* v. *Klinck Packing Co.,* 214 N. Y. 121; *Panama Refining Co.* v. *Ryan,* 293 U. S. 388; *Matter of Levine* v. *O'Connell,* 275 App. Div. 217, 300 N. Y. 658; *Matter of Lyons* v. *Prince,* 281 N. Y. 557; *Matter of Small* v. *Moss,* 279 N. Y. 288; *Packer Collegiate Inst.* v. *University of State of N. Y.,* 298 N. Y. 184; *Brown* v. *University of State of N. Y.,* 242 App. Div. 85, 266 N. Y. 598.)

*Martin A. Schenck, Harold C. McCollom, John W. Burke, Jr.,* and *John H. Barber* for The Jockey Club, respondent in both proceedings. I. Petitioner has no constitutional right to run

race horses, or to have a license to run race horses, for purses and on the tracks of others, particularly where there has been a unanimously confirmed factual finding of disqualification. (*Corrigan* v. *Coney Is. Jockey Club,* 2 Misc. 512; *People ex rel. Sturgis* v. *Fallon,* 152 N. Y. 1; *Grannan* v. *Westchester Racing Assn.,* 153 N. Y. 449; *Madden* v. *Queens Co. Jockey Club,* 296 N. Y. 249.) II. Appellant is estopped from attacking section 7512 of the Unconsolidated Laws in regard to his hearing before the Joint Board (as to 1949) and in regard to the denial of his license (as to 1950) by The Jockey Club. Furthermore, the questions urged are not within the limits of either article 78 proceeding. (*Grannan* v. *Westchester Racing Assn.,* 153 N. Y. 449; *Molloy & Co.* v. *Berkshire,* 143 F. 2d 218; *Atkins* v. *Hertz Drivurself Stations, Inc.,* 237 App. Div. 31; *United Fuel Gas Co.* v. *Railroad Comm. of Ky.,* 278 U. S. 300.) III. Section 7512 of the Unconsolidated Laws was validly enacted pursuant to the constitutional mandate and is appropriate to prevent such offenses as appellant's against section 9 of article I of the Constitution. (*People ex rel. Sturgis* v. *Fallon,* 152 N. Y. 1; *People ex rel. Lawrence* v. *Fallon,* 152 N. Y. 12; *Grannan* v. *Westchester Racing Assn.,* 153 N. Y. 449; *Matter of Trosk* v. *Cohen,* 262 N. Y. 430; *Nebbia* v. *New York,* 291 U. S. 502.) IV. Section 7512 is not invalid as failing to prescribe standards for granting licenses to horse owners or as improperly delegating legislative functions to a private corporation; nor is Rule of Racing 34 (a) vague or invalid in its application to appellant's book-making and gambling connections. (*Grannan* v. *Westchester Racing Assn.,* 153 N. Y. 449; *Matter of Bell* v. *Board of Regents of Univ. of State of N. Y.,* 295 N. Y. 101; *Interstate Commerce Comm.* v. *Illinois Central R. R. Co.,* 215 U. S. 452; *Douglas* v. *Noble,* 261 U. S. 165; *Bourjois, Inc.,* v. *Chapman,* 301 U. S. 183; *People ex rel. Lieberman* v. *Vandecarr,* 175 N. Y. 440, 199 U. S. 552; *Matter of Mandel* v. *Board of Regents of Univ. of State of N. Y.,* 250 N. Y. 173; *Matter of Elite Dairy Products* v. *Ten Eyck,* 271 N. Y. 488.)

*Nathaniel L. Goldstein, Attorney-General* (*John P. Powers* and *Wendell P. Brown* of counsel), for Joint Board and another, respondents. I. The utilization by the Legislature of The Jockey Club as a part of the administrative scheme for the

regulation of horse racing in this State was appropriate and involved no violation of the State or Federal Constitutions. (*Madden* v. *Queens Co. Jockey Club,* 296 N. Y. 249; *Grannan* v. *Westchester Racing Assn.,* 153 N. Y. 449; *People* v. *Nicchia,* 224 N. Y. 637, 254 U. S. 228; *People ex rel. State Bd. of Charities* v. *New York Soc. for Prevention of Cruelty to Children,* 161 N. Y. 233; *People ex rel. Westbay* v. *Delaney,* 73 Misc. 5, 146 App. Div. 957.) II. The statutory command that the reviewing body, the Joint Board, be composed of three members of the Racing Commission and two disinterested stewards of The Jockey Club deprived appellant of no constitutional rights. (*Matter of Merritt* v. *Swope,* 267 App. Div. 519; *Hirabayashi* v. *United States,* 320 U. S. 81; *People ex rel. Lieberman* v. *Vandecarr,* 175 N. Y. 440, 199 U. S. 552; *Dennis* v. *United States,* 339 U. S. 162; *United States* v. *Wood,* 299 U. S. 123; *National League of Comm. Merchants* v. *Hornung,* 148 App. Div. 355.)

LEWIS, J. An appeal in each of the two proceedings captioned above [1] presents for our decision a challenge to the constitutionality of section 7512 of McKinney's Unconsolidated Laws (L. 1926, ch. 440, § 9-b, added by L. 1934, ch. 310, § 5, as amd.) which purports to delegate to The Jockey Club, a private corporation, certain powers which the appellant asserts the Legislature may not delegate within the framework of the Federal and State Constitutions. The statute challenged reads as follows:

" § 7512. *Licenses for participants and employees at race meetings.*

" 1. For the purpose of maintaining a proper control over race meetings conducted pursuant to section seven of this

---

[1] Appellant Fink instituted under article 78 of the Civil Practice Act the two proceedings which are the subject of the present appeals: The proceeding first captioned above is concerned with a determination by a " joint board " — comprising two members of The Jockey Club and three members of the State Racing Commission — made during 1949, which upheld the refusal of The Jockey Club to issue to appellant a license to run his horses at race meetings in this State during that year. The second proceeding concerns the subsequent refusal of The Jockey Club to consider appellant's application for a similar license for the year 1950 pending the determination of the first case. The parties stipulated that both proceedings were to be transferred to the Appellate Division, which court unanimously confirmed without opinion the decision of the Joint Board in the first proceeding and dismissed the petition in the second proceeding on the law. The appeals to this court are taken as of right on constitutional grounds.

act [Unconsol. Laws, § 7508], *the Jockey Club shall license owners, trainers and jockeys at running races* and the National Steeplechase Association shall license owners, trainers and jockeys at steeplechases and hunts. They shall also license such other persons exercising their occupations or employed at race meetings held pursuant to this act as the state racing commission may, by rule or regulation, determine. The state racing commission shall fix the license fees to be paid by persons or corporations so licensed, which fees shall be paid to the Jockey Club or National Steeplechase Association upon the issuance of each such license, and no such license shall be valid until the receipt of such fee shall be endorsed thereon by the Jockey Club or National Steeplechase Association. Each such license unless revoked by the Jockey Club or National Steeplechase Association for cause shall be for the period of one year from April first of the year in which the same shall be issued. From the proceeds of such license fees, the Jockey Club and National Steeplechase Association together shall be entitled to retain annually the sum of fifteen thousand dollars for the payment of reasonable expenses in issuing such licenses and collecting such fees, and for contribution toward the expenses of the breeding bureau of the Jockey Club. On or before December first, annually, they shall file with the state racing commission a detailed statement of all such license fees indicating the amount thereof and from whom collected, and shall pay to the commission for the use of the state the balance, if any, in excess of the amount which they are authorized by this section to retain for the purposes specified herein. All officials connected with the actual conduct of racing, appointed by the Jockey Club, National Steeplechase Association or the associations or corporations licensed by the commission, shall be approved by the state racing commission.

" 2. No such license shall be revoked unless such revocation is made at a meeting of the Jockey Club or National Steeplechase Association or of the stewards thereof. The failure of the Jockey Club or National Steeplechase Association to act upon an application for a license within fifteen days shall be deemed a refusal of the license. Upon the application to the state racing commission of a person whose license has been refused or revoked, made within thirty days after service by mail on such person of a notice of such refusal or revocation, such person

shall be entitled to a prompt hearing before a joint session of the state racing commission and two stewards of the Jockey Club or National Steeplechase Association who did not participate in the refusal or revocation of such license by such Club or Association, which joint session, acting as a board, shall take final action thereon.

" 3. The state racing commission and two stewards of the jockey club or national steeplechase association, at a joint session and, acting as a board, shall have the power to suspend and/or revoke any license granted under this section after giving the licensee a reasonable opportunity to be heard." (Emphasis supplied.)

Insofar as appears from the records before us The Jockey Club's corporate charter has at no time empowered it to grant licenses of any kind.[2]   The only authority for the licensing power exercised by The Jockey Club came with the enactment

---

[2] "The Jockey Club" was incorporated in 1894, pursuant to chapter 213 of the Laws of 1891.   That statute provides:

"An Act to provide for the formation of corporations for improving the breeds of domestic animals.   * * *

"Section 1. Five or more persons of full age, citizens of the United States and a majority of them residents of this state, may become a corporation for the purposes of investigating, ascertaining and keeping a record of the pedigrees of any kind of domestic animals, and of instituting, maintaining, controlling and publishing a stud book, herd book or book of registry of such kind of domestic animals, in the United States of America and Canada, and of promoting and holding exhibitions of such animals, and generally for the purposes of improving the breed thereof; by making, acknowledging and filing a written certificate, stating the name by which the corporation shall be known, its particular objects and purposes, which shall be one or more of the purposes hereinbefore specified, the number of directors not less [sic] three nor more than twenty-one who shall manage its affairs   * * *.

"2. Such corporation may, by its by-laws not inconsistent with law, define the terms and qualifications upon which entries shall be made in such book of registry, stud book or herd book, and of controlling, passing upon and admitting or rejecting all applications for the making of entries therein, for the admission, suspension and expulsion of members, for the number and election of its officers and the defining of their duties, the time and place for the election thereof, and the manner in which any vacancy in any office of the corporation shall be filled, and generally for carrying out its corporate purposes.   Such corporation may from time to time, alter, modify or change such by-laws, but not so as to be inconsistent with law.

"3. This act shall take effect immediately."

of section 5 of chapter 310 of the Laws of 1934, which added to chapter 440 of the Laws of 1926, a new section 9-b which (as amd. by L. 1935, ch. 613; L. 1939, ch. 837, and L. 1947, ch. 196) is now section 7512 of the Unconsolidated Laws (quoted *supra*). Under authority which had its origin in that statute (L. 1934, ch. 310, § 5, as amd.), The Jockey Club, a private corporation, for the purpose — as declared by the Legislature — of " * * * maintaining a proper control over race meetings conducted pursuant to section seven of this act [Unconsol. Laws, § 7508] " was authorized to " license owners, trainers and jockeys at running races * * *." Under section 7508 *id.* the Legislature provided further that " *Every such license* shall contain a condition that all running races or race meetings conducted thereunder *shall be subject to the reasonable rules and regulations from time to time prescribed by the Jockey Club, a corporation organized under the laws of the state of New York * * *.*" (Emphasis supplied.) The rules prescribed by The Jockey Club are known as the " Rules of Racing " of which " Rule 34 ", bearing the caption " Powers of the Stewards of The Jockey Club ", provides in part as follows:

" 34.(a) The Stewards of The Jockey Club shall have power, *at their discretion,* to grant licenses to Owners, Trainers and Jockeys and to such other persons, exercising their occupations or employed at race meetings as the State Racing Commission may determine to require a license from The Jockey Club; and such Stewards may revoke or suspend such licenses in accordance with the then existing laws of the State of New York. Every such license issued by The Jockey Club shall provide that the licensee shall comply with the Rules and Regulations of the Commission and these Rules of Racing, and that violation thereof may be punished by fine, suspension of the privileges accorded thereby, or revocation of the license. No license shall be issued by said Stewards to a person shown *to the satisfaction of said Stewards* to be engaged, or to have been engaged in practices detrimental to the best interests of racing, including bookmaking or pool-selling, or to anyone so shown to be or to have been connected with any such person in any such practice, provided that, in cases in which the Stewards shall find that such occupation or connection has ceased for a sufficiently long period

of time, they may, *in their discretion,* issue such license. Nor shall a license be issued by said Stewards to a person so shown to *be undesirable or financially irresponsible or otherwise unqualified.*

" (b) Upon application to the State Racing Commission of a person whose license has been refused or revoked, made within such period as may be prescribed by the then existing laws of the State of New York, such person shall be entitled to a prompt hearing before a joint session of the State Racing Commission and two Stewards of The Jockey Club in accordance with said laws, which joint session, acting as a board, shall take final action thereon.

" The State Racing Commission and two Stewards of The Jockey Club at a joint session, and acting as a board, shall have the power to suspend and/or revoke any license granted under Rule 34(a) after giving a licensee a reasonable opportunity to be heard   *   *   *." (Emphasis supplied.)

It thus appears that for the declared purpose of maintaining a proper control over race meetings within the State, the Legislature by sections 7512 and 7508 of the Unconsolidated Laws (*supra*) has delegated to The Jockey Club the power to license horse owners, trainers and jockeys at running races and, as an incident to that licensing power and under subdivision (a) of rule 34 of The Jockey Club's " Rules of Racing ", the stewards of that club are authorized to grant such licenses " *at their discretion* ". In fact, in the exercise of the broad discretion vested in them in the issuance of licenses — essentially a sovereign power — the stewards are officers of The Jockey Club who are neither chosen by, nor responsible to the State government. They are not sworn as public officers, nor are they removable as such.

The respondents rely chiefly upon *Grannan* v. *Westchester Racing Assn.* (153 N. Y. 449). There this court ruled that the Westchester Racing Association could lawfully exclude from its track the plaintiff who admitted he had bribed a jockey and had thereby violated one of the association's rules. In that case, however, the Westchester Racing Association was licensed pursuant to statute (L. 1895, ch. 570) by the State Racing Commission — a governmental administrative body — rather than by a private corporation such as The Jockey Club. Accordingly,

that case can hardly be invoked as authority for a view contrary to that indicated herein.

We are told that benefits of great worth to the maintenance of proper control over race meetings and to the improvement of the breed of horses have been derived from action by The Jockey Club. Even assuming that fact we are mindful that " * * * nothing is more certain than that beneficent aims, however great or well directed, can never serve in lieu of constitutional power." (*Carter* v. *Carter Coal Co.*, 298 U. S. 238, 291.)

In our view the delegation by the Legislature of its licensing power to The Jockey Club, a private corporation, is such an abdication as to be patently an unconstitutional relinquishment of legislative power in violation of section 1 of article III of the Constitution of this State which provides: " The legislative power of this State shall be vested in the Senate and Assembly." (See *Fox* v. *Mohawk & Hudson Riv. Humane Soc.*, 25 App. Div. 26, 33, affd. 165 N. Y. 517, 524, 528; *Carter* v. *Carter Coal Co.*, *supra*, p. 311; *Schechter Poultry Corp.* v. *United States*, 295 U. S. 495, 537; *Rouse* v. *Thompson*, 228 Ill. 522, 536; *State* v. *Crawford*, 104 Kan. 141, 143; *Baughn* v. *Gorrel & Riley*, 311 Ky. 537; *Wagner* v. *City of Milwaukee*, 177 Wis. 410, 418.)

Even if the Legislature's power to license had been delegated to a governmental agency, the statute now challenged would have to be stricken down for lack of guides and proper standards. (*Packer Collegiate Inst.* v. *University of State of N. Y.*, 298 N. Y. 184, 191-192; *Matter of Small* v. *Moss*, 279 N. Y. 288, 299.)

The order of the Appellate Division confirming the determination by respondents refusing the petitioner's application for an owner's license for the year beginning April 1, 1949, should be reversed and the determination of the Joint Board annulled, with costs in this court and in the Appellate Division. The order of the Appellate Division dismissing the petitioner's application for the annulment of a determination by the stewards of The Jockey Club made March 9, 1950, should be reversed and the determination of The Jockey Club annulled, without costs.

LOUGHRAN, Ch. J., CONWAY, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Ordered accordingly.