(No. 32314.—)

THE PEOPLE *ex rel.* Chicago Dryer Company *et al.,* Appellees, *vs.* THE CITY OF CHICAGO *et al.,* Appellants.

*Opinion filed November 20, 1952.*

JOHN T. MORTIMER, Corporation Counsel, of Chicago, (L. LOUIS KARTON, A. A. PANTELIS, WILLIAM J. KAFKA, and HARRY H. POLLACK, of counsel,) for appellants City of Chicago *et al.;* WACHOWSKI & WACHOWSKI, of Chicago, (CASIMIR R. WACHOWSKI, of counsel,) for appellant Mathew W. Bieszczat.

TURNER, HUNT & DE BOLT, of Chicago, (MANLY K. HUNT, of counsel,) for appellees.

STEPHEN LOVE, of Chicago, (D. REX MCBRIDE, of counsel,) for *amicus curiae.*

Mr. JUSTICE DAILY delivered the opinion of the court:

This is an appeal from a judgment of the superior court of Cook County directing that a writ of *mandamus* issue to compel the city of Chicago, its mayor, aldermen, and various other officials to change the name of Pulaski Road to Crawford Avenue. Divers constitutional issues which were raised, passed upon by the trial court and properly preserved for review, give this court jurisdiction of a direct appeal.

Taking judicial notice of our records, we find that in April, 1935, this court was called upon to determine the validity of the ordinance enacted by the city council of Chicago by which the name of Crawford Avenue was changed to Pulaski Road. (*Hagerty* v. *City of Chicago,* 360 Ill. 97.) At that time section 23 of article V of the Cities and Villages Act, (Ill. Rev. Stat. 1935, chap. 24, par. 65(23),) article V being that which defined the powers of a city council, exclusively conferred the power of nam-

ing streets on city councils in this language: "To name and change the name of any street, avenue, alley or other public place." Construing this statute in the *Hagerty case,* we held that the naming of streets was a legislative function and that where the General Assembly had delegated such power to municipalities, courts could not disturb the exercise of such power on the ground that the exercise was unreasonable. The case also held that property owners along the street do not have a vested property right in the name of the street.

Following this decision, the legislature, in 1937, amended section 23 of article V, delegating the power as follows: "To name and change the name of any street, avenue, alley or other public place, provided no change of name shall be made unless a proposition for such change has first received the written consent of the owners of at least sixty per cent (60%) of the property abutting thereon; And, provided further, that the city council or board of trustees, as the case may be, shall change the name of any street, avenue, alley or public place upon a petition signed by the owners of at least sixty per cent (60%) of the property abutting thereon, setting forth the name desired; but said city council or board of trustees shall not assign to such street, avenue, alley or public place the same name as is used to designate any other street, avenue, alley or public place." (Ill. Rev. Stat. 1937, chap. 24, par. 65.22.) The statute, as last quoted, was incorporated in section 26 of article 23 of the Revised Cities and Villages Act of 1941, (Laws of 1941, vol. 2, p. 171,) and continues in force at this time. Ill. Rev. Stat. 1951, chap. 24, par. 23-26.

In June, 1948, a private organization styling itself as "The Crawford Avenue Association" financed and caused the circulation of petitions to change the name of Pulaski Road to Crawford Avenue. By June 21, 1949, some 1463 completed petitions addressed to the mayor and city council were filed with the city clerk of the city of Chicago.

Shortly thereafter the council caused the petitions to be sent to the map department of the public works commission for checking and verification. On January 23, 1950, the commissioner of public works reported to the council that the petitions had been checked and the names of the property owners verified, and that as of the date of his report, the petitions represented 60.4 per cent of the total frontage of Pulaski Road. The report continued that had it been possible to verify the petitions on the date they were filed, they would have represented 63.36 per cent of the property abutting on Pulaski Road. Following receipt of the report, no further action was taken by the city council.

On December 20, 1950, the plaintiffs, ten in number, filed a complaint on behalf of themselves and 1483 other persons, firms or corporations, alleged to be the owners of record of more than sixty per cent of the property abutting on Pulaski Road. The complaint pleaded the statute, alleged that petitions had been circulated proposing to change the name of Pulaski Road to Crawford Avenue; that ownership of more than sixty per cent of the frontage on Pulaski Road had been verified as being represented by the petitions; that the city council had failed and refused to act upon the petitions as provided by the statute; and that the plaintiffs and other property owners will suffer irreparable damage to property and business unless the name of the street is changed in accordance with the petitions. It prayed that a writ of *mandamus* issue to compel the city council and various other city officials, who were named as defendants, to change the name of the street. Defendants filed two separate motions to dismiss, which were denied, then ultimately filed an amended answer which, for the most part, challenged the constitutional validity of the statute upon which the complaint was based. After a hearing, the trial court directed that a writ of *mandamus* issue as prayed, whereupon defendants prose-

cuted this appeal. Mathew Bieszczat, an alderman, who, during the course of the trial, sought to substitute private counsel in his behalf in lieu of the corporation counsel who represented the other defendants, has filed a separate brief and additional abstract. Upon leave granted, the Illinois Division of Polish American Congress, Inc., has filed a brief in support of the defendants as *amicus curiae*.

In seeking reversal, the defendants have attacked the proceeding and trial court's judgment on many different grounds, chief of which are: (1) that section 26 of article 23 of the Revised Cities and Villages Act is unconstitutional because it is vague, uncertain and indefinite, and because it constitutes an unwarranted delegation of legislative power in contravention of section 1 of article IV of the constitution; (2) that the section is a special law as prohibited by section 22 of article IV of the constitution; (3) that the judgment granting the writ of *mandamus* was, in effect, the exercise by the judiciary of a power vested in the legislative department, *viz.*, the city council, in violation of article III of the constitution; **(4) that plaintiffs failed** to prove their right to *mandamus* or their right to maintain a representative suit, by reason of the fact that recourse to the records of the city map department was an improper and insufficient method of proving ownership of sixty per cent of the abutting property; and (5) that the trial court erred in denying defendant's motion to introduce into evidence withdrawals of consent to change the name. The brief filed by Bieszczat likewise attacks the validity of the statute and the sufficiency of plaintiffs' proof and, in addition, complains that due process was violated by proceedings allegedly occurring out of open court. He also challenges the propriety of the court's denial of his motion to substitute counsel during the course of the proceeding.

While merit may attach to several of the contentions made, the first point requiring consideration is that sec-

tion 23-26 of the Revised Cities and Villages Act improperly delegates legislative power to private individuals in contravention of section 1 of article IV of our constitution. The decision in *Hagerty* v. *City of Chicago,* 360 Ill. 97, has definitely fixed that the naming of a street, or changing the name, is a legislative act, to be performed by a legislative body. (See, also: *Darling* v. *Jersey City,* 80 N.J.L. 514, 78 Atl. 10.) In many decisions of this court it has been pointed out that the power to make laws for this State is vested in the legislature and is a sovereign power, requiring the exercise of judgment and discretion. On common-law principles, as well as by settled constitutional law, it is a power which cannot be delegated to another body, authority or person. (*Sheldon* v. *Hoyne,* 261 Ill. 222; *Rouse* v. *Thompson,* 228 Ill. 522.) The principle is also stated that the legislature must decide what the law shall be, and an act which vests any person or authority with arbitrary discretion to determine what the law shall be in a particular situation is invalid. (*People ex rel. Bernat* v. *Bicek,* 405 Ill. 510; *North* v. *Board of Education,* 313 Ill. 422.) However, it is also recognized that the ultimate operation of a law may by its own terms be made to depend upon a contingency, such as an affirmative vote of the electors in a given district or upon the action of some municipality, commission, or other public agency named in the act. (*Rouse* v. *Thompson,* 228 Ill. 522.) The *Rouse case* also points out that it is the general rule that such power cannot be conferred upon private persons. Still another recognized principle is, that while the legislature may not delegate its general legislative authority to decide what the law shall be, it may authorize others to do many things which it might properly but cannot understandingly or advantageously do itself. (*Owens* v. *Green,* 400 Ill. 380; *People ex rel. Thomson* v. *Barnett,* 344 Ill. 62.) Falling within the latter principle is the established view that it is not regarded that the rule against delegation of

legislative power is violated by vesting municipal corporations with certain powers of legislation on subjects of purely local concern connected with their municipal affairs. (*People ex rel. Thomson* v. *Barnett,* 344 Ill. 62.) Overall, the fundamental distinction lies between a delegation of power to make the law, which involves a discretion of what the law shall be, and conferring an authority or discretion as to its execution to be exercised under and in pursuance of the law. The first cannot be done; the latter is unobjectionable. *People ex rel. Bernat* v. *Bicek,* 405 Ill. 510.

Before looking to the manner in which these principles apply to the case at hand, it will be remembered that, under the former statute, power to name or change the name of a street was vested in corporate authorities. In *Hagerty* v. *City of Chicago,* 360 Ill. 97, this court held that the function of naming streets was a legislative matter. Section 23-26 of the Revised Cities and Villages Act, the current law, gives corporate authorities power to name streets originally, but empowers them to change a name only when the proposition has received the written consent of the owners of record of at least sixty per cent of the property abutting on the street involved. By a second proviso, it is mandatorily stated that the corporate authorities *"shall"* change the name of a street upon a petition for such change, signed by the owners of at least sixty per cent of the abutting property. In either case, the enactment of an ordinance in performance of the legislative function of changing the name of a street is made to depend upon the consent or desires of those owning a majority of the abutting property. Appellants contend that this is an invalid and unwarranted delegation of legislative power to private persons. Appellees, however, construe the act as being complete in itself in vesting the power of changing the name of a street in the corporate authorities and interpret the consent of the property owners as being a mere contingency upon which the act, by its own terms, is made to operate.

By the terms of the statute under consideration, if the owners of sixty per cent of the property abutting on a street present a petition to the corporate authorities for a change of name, the authorities must change the name as requested. The action they take is determined by the petitioning owners whose motives may be unrelated to the welfare of the city as a whole; they are given no discretion to refuse and they must accept the name proposed, however grotesque or inappropriate. The renaming of a street is not a matter of concern only to the owners of the property abutting on the street but is of concern to the entire population of a city. In many large urban areas comprehensive plans for the naming of streets have been adopted to insure greater convenience to the public and to promote simple methods of location in emergencies. Section 23-26 would defeat such planning in the municipalities of this State, for no discretion, exercise of judgment, or supervising control is vested in the corporate authorities or any other officer elected by or responsible to the people, should the abutting owners decide on a change of name. The same difficulty presents itself should it be the corporate authorities who propose the change of name, for even then the statute requires that the consent of the owners of the majority of the abutting property be obtained. In such a case the city is bound by the action or inaction of the owners. There is no provision for review in the law, thus the failure of the required number of owners to consent must be considered final. They are not bound by any official duty, but are free to withhold consent selfishly and arbitrarily and to subject the city and its authorities to their will or caprice. In either case the city legislative body which enacts the ordinance changing the name of a street has no voice in what the law shall be, for by section 23-26 that discretion is vested solely in those who own sixty per cent of the property abutting on the street. The history surrounding this case demonstrates the instabilities

and controversies which can result from an arbitrary discretion so vested.

From what has been said, it is apparent that the provision with reference to the consent of abutting owners is not a mere contingency upon which section 23-26 is, by its own terms, made to operate. The effect of the consent is, rather, to give the property owners unbridled discretion of what the law shall be, and, once they have made that determination, the corporate authorities become a mere automatic register of their action and the will of the property owners is given the effect of law. (See: *Eubank* v. *City of Richmond*, 226 U.S. 137, 57 L. ed 156; *Cusack Co.* v. *City of Chicago*, 242 U.S. 526, 61 L. ed. 472.) Stated simply, here the provision in reference to the consent of the abutting owners affects the enactment of the law rather than its execution. Thus construed, the decision of a group of property owners, in an admittedly legislative field, is made to prevail over that of the corporate authorities who represent the entire population. The will of this group is thrust upon the minority of the abutting owners and the city at large without regard for the necessity, beneficence or reasonableness of their action. This is legislative delegation in its most obnoxious form, for it is not even a delegation to an official or official body, presumptively disinterested, but to private persons whose interests may be, and often are, adverse to the interest of others similarly situated or directly affected by the exercise of the power delegated. (*Carter* v. *Carter Coal Co.* 298 U.S. 238, 80 L. ed. 1160.) The legislature cannot abdicate its functions or subject citizens and their interests to any but lawful public agencies, and a delegation of any sovereign power of government to private citizens cannot be sustained nor their assumption of it justified. (*People* v. *Bennett*, 29 Mich. 451; *Rouse* v. *Thompson*, 228 Ill. 522.) The delegation contained in section 23-26 clearly vests in a group of private citizens an arbitrary discretion of what

the law shall be. Such a delegation of authority is not warranted by section 1 of article IV of our constitution or by the principles of constitutional construction which have been placed upon it.

We conclude that section 23-26 is unconstitutional and invalid, therefore the judgment of the superior court directing a writ of *mandamus* to issue is reversed.

*Judgment reversed.*