THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

First District (4th Division)   No. 79-884

Opinion filed April 10, 1980.—Rehearing denied May 15, 1980.

William J. Scott, Attorney General, of Chicago (George William Wolff, Assistant Attorney General, of counsel), for petitioner.

Martin, Craig, Chester & Sonnenschein, of Chicago (Jeffrey C. Fort, of counsel), for respondents.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

On March 26, 1976, the Illinois Attorney General filed a complaint with the Illinois Pollution Control Board (the Board). The complaint alleged that from August 10, 1973, to the date of the complaint the respondent, Santa Fe Park Enterprises, Inc. (Santa Fe), caused or allowed the emission of sound beyond the boundaries of its motor vehicle racing facility so as to cause noise pollution in violation of certain statutes and regulations. During the pendency of the hearings before the Board, the Environmental Protection Act (the Act) (Ill. Rev. Stat. 1977, ch. 111½, par. 1001 *et seq.*) was amended so as to totally exempt certain sporting events from noise emission standards and limitations. The Board subsequently granted Santa Fe's motion to dismiss which was predicated on the recently enacted amendment. The Attorney General appeals from the dismissal.

The Environmental Protection Act contains 13 separate titles, encompassing particular subjects such as air pollution, water pollution, public water supplies, land pollution, noise pollution and atomic radiation; other titles contain general provisions concerning regulations, enforcement, variances, permits, judicial review and penalties.

The subject of title VI, which contains three sections, is noise pollution. Santa Fe is charged with violation of section 24 of that title which provides:

"No person shall emit beyond the boundaries of his property any noise that unreasonably interfers [*sic*] with the enjoyment of life or with any lawful business or activity, so as to violate any regulation or standard adopted by the Board under this Act." (Ill. Rev. Stat. 1977, ch. 111½, par. 1024.)

In a recent opinion, *Rockford Drop Forge Co. v. Pollution Control Board*

(1980), 79 Ill. 2d 271, 402 N.E.2d 602, the Illinois Supreme Court rejected an argument that section 24 was unconstitutional because of vagueness and improper delegation.

Section 25 of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1025) permits the Board to adopt regulations prescribing limitations on noise emissions. Pursuant to this authority the Board adopted Rules and Regulations, chapter 8 of which contains noise regulations. Santa Fe is charged with violating Rule 102 of those regulations, which provides:

"No person shall cause or allow the emission of sound beyond the boundaries of his property * * * so as to cause noise pollution in Illinois, or so as to violate any provision of this Chapter or the Illinois Environmental Protection Act."

Rule 101 of chapter 8 defines a number of terms. "Noise pollution" is defined in Rule 101(j) as:

"The emission of sound that unreasonably interferes with the enjoyment of life or with any lawful business or activity."

While the hearings on the Attorney General's complaint were in progress before the Board, the Act was amended by the addition of a paragraph to section 25, the provision which gives the Board authority to adopt rules and regulations. The new paragraph in effect provides that Board standards and regulations for monitoring noise shall not be applied to certain sporting events:

"However, no Board standards for monitoring noise or regulations prescribing limitations on noise emissions shall apply to skeet, trap or shooting sports clubs chartered and operational prior to January 1, 1975, which are situated in the same location in which they were situated prior to January 1, 1975 *or to any sanctioned motor racing event at a motor racing facility in existence prior to January 1, 1975,* or any other sporting event sanctioned by the American Athletic Union, the National Collegiate Athletic Association, or the Illinois High School Association." (Emphasis added.) (Ill. Ann. Stat., ch. 111½, par. 1025 (Smith-Hurd 1979 Supp.).)

In addition, the Act was amended to add a definition of "sanctioned sporting event":

"(v) 'Sanctioned sporting event' means any contest or demonstration conducted in accordance with the standards, rules and with the endorsement of the United States Auto Club, or the National Association for Stock Car Auto Racing, or the Association for Motor Sports, or the American Athletic Union, or the National Collegiate Athletic Association, or the Illinois High School Association." 1979 Ill. Legis. Serv., Pub. Act 81-856.

On appeal, the Attorney General argues the new statute (1) unconstitutionally delegates legislative power, (2) violates the due process clause, (3) violates the constitutional proscription against special legislation and constitutes a denial of equal protection, (4) violates article XI of the 1970 Constitution, and (5) exempts sanctioned events only from Board monitoring standards and noise limitation regulations and not from the general nuisance provision of the Act. In light of the nature of the issues raised on appeal, it is not necessary to summarize the testimony given at the Board hearings.

Preliminarily, Santa Fe argues the Attorney General lacks standing to challenge the constitutionality of the amendment to section 25. This argument has two parts: (1) that the Attorney General has no standing to assert an interest which is not sufficiently state-wide; and (2) that the Attorney General cannot challenge the constitutionality of a statute because he is under a duty to defend Illinois statutes.

Article V, section 15 of the 1970 Illinois Constitution provides:

"The Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law."

The Illinois Supreme Court has held that under the 1970 Constitution the Attorney General has all the powers associated with that office at common law. *People v. Buffalo Confectionary Co.* (1980), 78 Ill. 2d 447, 401 N.E.2d 546; *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 359 N.E.2d 149.

The cases relied on by Santa Fe in which the Attorney General was a party involve "private" rather than public interests. For example, in *People ex rel. Lowe v. Marquette National Fire Insurance Co.* (1933), 351 Ill. 516, 184 N.E. 800, the Attorney General brought suit at the request of the Director of Trade and Commerce. An order was entered requiring the insurance company to be liquidated. The appointed liquidator retained and paid legal fees to private counsel. Certain objectors argued the Attorney General's office was required to perform all the necessary legal services rather than private counsel. The supreme court concluded that only private rights, between the company and its insureds, were involved and that the Attorney General had no duty to perform in the adjudication of these purely private rights. In *People ex rel. Moloney v. General Electric Ry. Co.* (1898), 172 Ill. 129, 50 N.E. 158, the Attorney General was found not to have standing. There, the Attorney General brought suit to prevent the construction of a "street railroad." The supreme court dismissed the suit after concluding that no public rights were involved and that the real parties in interest were rival railroad companies.

Recent cases in which the Attorney General successfully brought suit include *People ex rel. Scott v. Chicago Park District* (1976), 66 Ill. 2d 65,

360 N.E.2d 773, and *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 359 N.E.2d 149. These cases involved interests more analogous to the one presented here and are instructive even though the question of the Attorney General's standing was apparently not raised. In *Chicago Park District* the Attorney General brought an action to declare void a senate bill which provided for the State of Illinois' conveyance of land submerged in Lake Michigan to United States Steel. The court found that the public purpose to be served by the grant of land was merely incidental and remote and affirmed the circuit court's summary judgment in favor of the Attorney General.

In the *Briceland* case the Attorney General sought a declaratory judgment that he was the only attorney empowered to institute and prosecute actions on behalf of the State before the Pollution Control Board. The trial court concluded section 4(e) of the Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1004(e)), which permitted the Environmental Protection Agency to present enforcement cases to the Board, was unconstitutional. In affirming the trial court, the supreme court wrote "the Attorney General is the sole officer authorized to represent the People of this State in any litigation in which the People of the State are the real party in interest * * *." *Briceland*, 65 Ill. 2d 485, 500, 359 N.E.2d 149, 156.

The Attorney General is under a duty to uphold the Illinois and Federal constitutions. (1970 Ill. Const., art. XIII, §3.) The Illinois Constitution contains provisions stating that it is the public policy of the State and the duty of each person to provide and maintain a healthful environment and that each person has the right to a healthful environment and may enforce this right against any party whether governmental or private. 1970 Ill. Const., art. XI, §§1, 2.

■■ We believe these constitutional provisions demonstrate that the State's interest in reducing pollution generally, including noise pollution, is sufficiently great to allow the Attorney General to maintain this suit. The determination of whether an interest is public or private cannot be made on a purely quantitative basis. We thus cannot accept Santa Fe's argument that the interest sought to be promoted here is not "public" because it is not sufficiently state-wide.

We are similarly not persuaded by the contention that the Attorney General lacks standing to challenge the constitutionality of this statute because he is under a duty to defend statutes passed by the General Assembly and signed into law by the governor. We believe the Attorney General's duty to defend the constitution necessarily encompasses a duty to challenge, on behalf of the public, a statute which the Attorney General regards as constitutionally infirm.

In granting Santa Fe's motion to dismiss, the Board did not consider

the Attorney General's arguments concerning the alleged unconstitutionality of the amendment to section 25; rather, the Board determined that it was not the proper forum for such issues. The Attorney General argues on appeal that the Board should have considered the constitutional issues. Santa Fe contends the Board does not have the power to declare unconstitutional a portion of the statute which created it.

The constitutional issues were properly raised before the Board and are therefore properly before this court now. We see no need to address the question of whether the Board should have and could have addressed those issues itself.

The Attorney General next argues the amendment to section 25 unconstitutionally delegates legislative power to private persons. He argues the statute improperly delegates to the United States Auto Club, the National Association for Stock Car Auto Racing and the Association for Motor Sports the power to determine what the law is. Under the Attorney General's interpretation of the statute, the associations are given absolute discretion to classify events as "sanctioned" or unsanctioned and thereby determine which events are subject to the Board's noise regulations. The Attorney General further contends that through this sanctioning process the associations are vested with authority to exempt individuals from a law and regulations of general application and to define which events do and do not create illegal noise. The Attorney General also points out that the statute says nothing about the standards and criteria which are to be applied by the associations in making the classifications.

Santa Fe contends the delegation argument is spurious; it submits that the amendment to section 25 affects only the jurisdiction of the Board. Santa Fe further argues the amendment does not give the identified organizations any power to license or to declare what the law should be. Rather, Santa Fe asserts, it simply declares that designated sporting events are no longer to be covered by any Board noise regulations. Santa Fe interprets "sanctioned sporting event" as merely adopting the standards of the "well-known sporting groups" named in the statute. Finally, Santa Fe submits that the clear intent of the statute was to remove from the Board's jurisdiction the power to regulate established motor sports events.

The issue here is whether the statute in fact delegates legislative power to private organizations. Professor Davis, in his treatise on administrative law, notes that "[t]he case law has not crystallized any consistent principles, either in the federal courts or in the state courts" on the question of delegation of legislative power to private parties. 1 K. Davis, Administrative Law Treatise §3.12, at 193 (2d ed. 1978).

In *People ex rel. Rudman v. Rini* (1976), 64 Ill. 2d 321, 356 N.E.2d 4, the court found unconstitutional delegation of legislative power where a

statute transferred the authority to fill vacancies in county offices from county boards to county central committees of political parties. The *Rudman* court wrote:

"The power to appoint public officers is the sovereign power of the State. [Citations.] The sovereign power of the State cannot be conferred upon a private person or group but must be delegated, if at all, to some public agency such as a municipal corporation, commission, local board or public officer." (64 Ill. 2d 321, 326, 356 N.E.2d 4, 7.)

The court concluded the appointing committees were indistinguishable from private individuals because they "do not carry the badge of public office. They are not accountable to the public, they give neither oath nor bond, and they do not separately substantially represent the populace of the area affected by the appointment." 64 Ill. 2d 321, 327, 356 N.E.2d 4, 7.

An earlier case involving alleged delegation of legislative power to private individuals is *People ex rel. Chicago Dryer Co. v. City of Chicago* (1952), 413 Ill. 315, 109 N.E.2d 201. There the court found an unconstitutional delegation where a statute provided that a street name could be changed only when the proposition received the written consent of at least 60 percent of the owners of abutting property and also requiring the name to be changed when abutting owners petitioned for it. The court noted "the legislature must decide what the law shall be, and an act which vests any person or authority with arbitrary discretion to determine what the law shall be in a particular situation is invalid." (413 Ill. 315, 320, 109 N.E.2d 201, 204.) The court found the delegation improper because:

"The will of this group is thrust upon the minority of the abutting owners and the city at large without regard for the necessity, beneficence or reasonableness of their action. This is legislative delegation in its most obnoxious form, for it is not even a delegation to an official or official body, presumptively disinterested, but to private persons whose interests may be, and often are, adverse to the interest of others similarly situated or directly affected by the exercise of the power delegated." 413 Ill. 315, 323, 109 N.E.2d 201, 205-06.

Two cases from other jurisdictions which are more analogous to the situation presented here are *Fink v. Cole* (1951), 302 N.Y. 216, 97 N.E.2d 873, and *Group Health Insurance v. Howell* (1963), 40 N.J. 436, 193 A.2d 103. In *Fink*, a statute delegated to a private "Jockey Club" the power to license horse owners, trainers, and jockeys. New York's highest court found the delegation was "such an abdication as to be patently an unconstitutional relinquishment of legislative power * * *." (302 N.Y. 216, 225, 97 N.E.2d 873, 876.) In the *Group Health* case a statute provided

in effect that no corporation could secure a certificate of authority to transact business as a medical service corporation without first obtaining the State Medical Society's approval of the corporation's prospective trustees. The Supreme Court of New Jersey found this was an unconstitutional delegation of legislative power. The court wrote:

> "We think such a power to determine who shall have the right to engage in an otherwise lawful enterprise may not validly be delegated by the Legislature to a private body which, unlike a public official, is not subject to public accountability, at least where the exercise of such power is not accompanied by adequate legislative standards or safeguards whereby an applicant may be protected against arbitrary or self-motivated action on the part of such private body." 40 N.J. 436, 445, 193 A.2d 103, 108.

The amendment to section 25, insofar as it affects Santa Fe and motor racing events generally, provides an exemption from Board standards for monitoring noise and from regulations prescribing limitations on noise emissions where:

> (1) the event takes place at a motor racing facility in existence prior to January 1, 1975;
>
> (2) the contest or demonstration is conducted in accordance with the standards and rules of specified private organizations; *and*
>
> (3) the contest or demonstration is conducted with *the endorsement* of one of the specified private organizations.

Without an "endorsement" from one of the named private organizations, any motor racing event must comply with the Board's noise pollution standards and regulations. We believe granting the power of "endorsement" to these groups constitutes improper delegation of legislative authority. The amendment improperly delegates to private groups the right to determine which events will be exempt from the law and which will not. As was the case in *Rudman*, the private organizations here are not accountable to the public and they do not substantially represent the populace of the areas affected by the amendment. And to paraphrase the *Dryer Co.* court, the will of the associations is thrust upon the public at large without regard for the necessity, beneficence or reasonableness of their actions. The legislature's delegation of the power to endorse is to private organizations whose interests may be adverse to the interests of others similarly situated or directly affected by the exercise of the power delegated.

Santa Fe argues it is proper for the legislature to adopt the standards of the sporting groups named in the statute. It contends the delegation here is analogous to the power given the American Bar Association by Supreme Court Rule 703(b) (Ill. Rev. Stat. 1977, ch. 110A, par. 703(b))

which provides in part that applicants seeking admission to the bar must have graduated from "a law school approved by the American Bar Association." This requirement, which apparently is common to most of the States, has consistently been upheld when challenged on the ground that it unconstitutionally delegates judicial power. (See, *e.g., Appeal of Murphy* (1978), 482 Pa. 43, 393 A.2d 369; *Potter v. New Jersey Supreme Court* (D. N.J. 1975), 403 F. Supp. 1036, *aff'd* (3d Cir. 1976), 546 F.2d 418.) We believe the cases are distinguishable. In *Murphy* the court found there was in fact no delegation of a judicial function. Rather, the Pennsylvania Supreme Court had "chosen to avail itself of the results of the ABA accreditation procedure, and accepts and adopts the ABA listing." (482 Pa. 43, 393 A.2d 369, 372.) More importantly, in both *Murphy* and *Potter* the courts took judicial notice of the ABA's purpose of upholding and maintaining the highest traditions of the legal profession and its long-standing concern with the quality of legal education in this country. Thus, the State's interest in assuring qualified legal practitioners was commensurate with the ABA's interest in maintaining high standards among law schools.

Here, by contrast, the Association of Motor Sports of Illinois, the organization which endorsed Santa Fe, described its corporate purpose in its Articles of Incorporation in the following terms:

> "[T]o promote, encourage, and develop the interests in the sport of motor racing in Illinois; to represent the interests of participants in the sport of motor racing in Illinois; and to generally do every act and thing that may be necessary, proper, advisable, convenient or useful for the accomplishment of the purpose of the business."

The legislature's presumed intent in enacting the amendment to section 25 was to provide an exemption from noise pollution regulations for some motor racing events. The corporate purpose of the Association of Motor Sports is unrelated to the legislature's presumed intent. Therefore, we are not persuaded by the analogy to the ABA's law school approval process.

Due to our disposition of this argument we need not address the other issues concerning the statute.

For the foregoing reasons the Board's order which granted Santa Fe's motion to dismiss is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

JOHNSON and ROMITI, JJ., concur.