IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO


| | | |
|---|---|---|
| EMMETT McLOUGHLIN REALTY, INC., and QUIK-MART STORES, INC., | ) ) ) | 2 CA-CV 2001-0198 DEPARTMENT A |
| Plaintiffs/Appellants, | ) ) | O P I N I O N |
| v. | ) ) | |
| PIMA COUNTY, | ) ) | |
| Defendant/Appellee. | ) ) ) | |


APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20003514

Honorable Charles V. Harrington, Judge

AFFIRMED

---

Ethan Steele and Jeffrey M. Neff                                        Tucson
                                              Attorneys for Plaintiffs/Appellants


Barbara LaWall, Pima County Attorney
  By Amelia Craig Cramer and Christopher Straub                         Tucson
                                              Attorneys for Defendant/Appellee


Patricia A. Orozco, Yuma County Attorney
  By Gregory T. Torok                                                    Yuma
                                                  Attorneys for Amicus Curiae
                                                                   Yuma County


Jorden, Bischoff, McGuire & Rose, P.L.C.
  By Douglas A. Jorden and Michele A. Hentrich                         Phoenix
                                                 Attorneys for Amici Curiae
                                                American Planning Association
                                               and the Arizona Chapter of the
                                               American Planning Association

BRAMMER, Presiding Judge.

¶1        The question presented in this appeal is whether A.R.S. § 11-829(F), now (G), which proscribes counties from rezoning land in a manner that restricts the permitted uses without the landowner's permission, violates the Arizona Constitution.[1]  As did the trial court, we find the "anti-downzoning" statute unconstitutional and, therefore, affirm its ruling granting partial judgment on the pleadings.

**Background**

¶2        In 1998, the legislature added subsection (F) to § 11-829.  1998 Ariz. Sess. Laws, ch. 55, § 1; 1998 Ariz. Sess. Laws, ch. 204, § 10. Subsection (F) provided:

> The legislature finds that a rezoning of land that changes the zoning classification of the land or that restricts the use or reduces the value of the land is a matter of statewide concern and such a change in zoning that is initiated by the governing body or zoning body shall not be made without the express written consent of the property owner.  The county shall not adopt any change in a zoning classification to circumvent the purpose of this subsection.

¶3        In April 2000, the Pima County Board of Supervisors considered and approved a county-initiated rezoning of a parcel of land owned by Emmett McLoughlin Realty, Inc., and Quik-Mart Stores, Inc. (collectively, McLoughlin), from CB-1 to a combination of SR and CR-2 zoning.  Although numerous business uses are permitted within the former zoning classification,

---

[1]The parties focus their arguments on § 11-829(F)'s downzoning clause, but the statute also provides that counties may not, without a property owner's consent, initiate "a rezoning of land that changes the zoning classification of the land."  Although this appears to limit all county-initiated rezoning, we confine our discussion, as did the parties, to the subsection's effect on downzoning.

the latter two permit only residential uses. McLoughlin did not consent to the rezoning and filed this action challenging Pima County's downzoning of the property. Pima County admits its "legislative act of downzoning [the property] was undertaken without the express written consent of the owners of the property, in contravention of" § 11-829(F), but contended in its motion for partial judgment on the pleadings, made pursuant to Rule 12(c), Ariz. R. Civ. P., 16 A.R.S., Pt. 1, that the subsection's consent provision is an unconstitutional delegation of legislative authority. The trial court agreed and, after finding that the consent provision had been the impetus for adopting subsection (F), held the subsection unconstitutional and, citing Rule 54(b), Ariz. R. Civ. P., 16 A.R.S., Pt. 2, entered partial judgment on the pleadings in the county's favor. This appeal followed.

### The Owner Consent Provision

¶4 A motion for judgment on the pleadings tests the sufficiency of the complaint and should be granted if the complaint fails to state a claim for relief. *Giles v. Hill Lewis Marce*, 195 Ariz. 358, 988 P.2d 143 (App. 1999). The issue we consider here is whether § 11-829(F) is constitutional, a question of law subject to our de novo review. *See Holly v. State*, 199 Ariz. 358, 18 P.3d 152 (App. 2001). In deference to the legislature's lawmaking authority, we begin with a presumption that the statute is constitutional. *Hernandez v. Frohmiller*, 68 Ariz. 242, 204 P.2d 854 (1949); *Flood Control Dist. of Maricopa County v. Gaines*, 202 Ariz. 248, 43 P.3d 196 (App. 2002). Indeed, if a statute can be constitutionally construed, we must adopt that construction. *Blake v. Schwartz*, 202 Ariz. 120, 42 P.3d 6 (App. 2002).

¶5 "The legislative authority of the State shall be vested in the Legislature . . . ." Ariz. Const. art. IV, pt. 1, § 1(1). Our courts, however, have condoned the legislature's

3

delegation of certain of its powers under appropriate circumstances. Among the examples of permissible delegation of powers by the legislature is the delegation of zoning powers to cities and counties found in A.R.S. §§ 9-462 through 9-462.08 and 11-801 through 11-876. *See Transamerica Title Ins. Co. v. City of Tucson*, 157 Ariz. 346, 757 P.2d 1055 (1988); *Anderson v. Pima County*, 27 Ariz. App. 786, 558 P.2d 981 (1976); *see also Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S. Ct. 114, 71 L. Ed. 303 (1926). The parties do not dispute that zoning decisions are legislative in nature, *see Mehlhorn v. Pima County*, 194 Ariz. 140, 978 P.2d 117 (App. 1998), but disagree on whether those decisions, or the ability to frustrate them, may be delegated to private individuals.

¶6 McLoughlin first contends § 11-829(F) is not a delegation of authority to property owners but merely constitutes the legislature's withdrawal of a portion of the counties' zoning power. The county points out, however, that each county has "a statutory duty to create a comprehensive plan in coordination with municipalities and to zone in coordination with municipalities in urban areas." *See* A.R.S. §§ 11-806 and 11-825(C)(4). A county's planning power is not merely ancillary to its ability to rezone; the two powers are interdependent. Only with the authority to rezone property can a county effectively make the extensive planning determinations required of it, such as is contemplated by the Urban Planning–Growing Smarter Act. *See* 1998 Ariz. Sess. Laws, ch. 204, §§ 1, 6-10; § 11-806. When it enacted § 11-829(F), the legislature neither revested in itself the zoning authority over property within counties' jurisdictions nor withdrew the counties' planning powers. Because it did not withdraw portions of counties' zoning authority by enacting the subsection, the legislature cannot effectively exercise the counties' zoning powers McLoughlin argues it ostensibly withdrew.

4

¶7        In contrast to McLoughlin's suggestion, the subsection affirmatively grants property owners the ability to prevent counties from initiating downzoning of the owners' property, *see* § 11-829(F) (county-initiated downzoning prohibited "without the express written consent of the property owner"), thereby effectively delegating to those property owners the downzoning authority that formerly reposed in counties. However, "[i]t is a well established theory that a legislature may not delegate its authority to private persons over whom the legislature has no supervision or control." *Industrial Comm'n v. C & D Pipeline, Inc.*, 125 Ariz. 64, 66, 607 P.2d 383, 385 (App. 1979); *see Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116, 122, 49 S. Ct. 50, 52, 73 L. Ed. 210, 214 (1928) (holding unconstitutional a zoning law that purported to give landowners who were "not bound by any official duty, but [we]re free to withhold consent for selfish reasons or arbitrarily and [could] subject [a neighboring landowner] to their will or caprice" authority to prevent a particular use on a neighbor's land); *People ex rel. Chicago Dryer Co. v. City of Chicago*, 109 N.E.2d 201, 206 (Ill. 1952) ("The legislature cannot abdicate its functions or subject citizens and their interests to any but lawful public agencies, and a delegation of any sovereign power of government to private citizens cannot be sustained nor their assumption of it justified."); 8 Eugene McQuillan, *Municipal Corporations* § 25.35, at 111 (3d ed. 2000) ("[Z]oning powers may not be delegated to private parties or property owners."); 83 Am. Jur. 2d *Zoning and Planning* § 615 (1992); *see also FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 877 (Tex. 2000) (state law allowing certain landowners to exempt their properties from municipal water requirements unconstitutionally delegated legislative power to landowners whose "pecuniary interest in developing their land to realize profit may be inconsistent with or repugnant to the public interest").

¶8 McLoughlin contends, however, that, instead of delegating to owners the ability to legislate, the subsection merely allows owners to waive a restriction established by the legislature, that is, a general prohibition on county-initiated downzoning. As Pima County points out, this argument highlights the distinction between two historical lines of authority in this area. The first, the "waiver" line, is typified by *Thomas Cusack Co. v. City of Chicago*, 242 U.S. 526, 37 S. Ct. 190, 61 L. Ed. 472 (1917), in which the Court upheld a city ordinance allowing a majority of property owners to waive a general prohibition against the erection of billboards in residential neighborhoods. In doing so, the Court noted the statute did "not [constitute] a delegation of legislative power, but [wa]s . . . a familiar provision affecting the enforcement of laws and ordinances." *Id.* at 531, 37 S. Ct. at 192, 61 L. Ed. at 476. Courts have generally distinguished such "waiver" regulations from ones requiring an owner to obtain the consent of neighboring property owners before taking land-use planning action. In *Eubank v. City of Richmond*, 226 U.S. 137, 33 S. Ct. 76, 57 L. Ed. 156 (1912), for example, the Court struck down a city ordinance allowing a majority of property owners to establish neighborhood setback requirements.

¶9 In the second line of authority, the "consent" line, the Illinois Supreme Court addressed the distinction in *Chicago Dryer Co.* The Illinois legislature had delegated to municipal corporations the authority to name streets. In response to *Hagerty v. City of Chicago*, 195 N.E. 652 (Ill. 1935) (naming of streets a legislative function), the legislature had amended the street-naming statute to require a municipal corporation to change a street's name it if received a petition

6

containing the signatures of sixty percent of the street's property owners. The court found the amended statute's effect was

> to give the property owners unbridled discretion of what the law shall be, and, once they have made that determination, the corporate authorities become a mere automatic register of their action and the will of the property owners is given the effect of law. Stated simply, here the provision in reference to the consent of the abutting owners affects the enactment of the law rather than its execution. Thus construed, the decision of a group of property owners, in an admittedly legislative field, is made to prevail over that of the corporate authorities who represent the entire population . . . without regard for the necessity, beneficence or reasonableness of their action.

109 N.E.2d at 205 (citations omitted). As such, the court said, the law constituted "legislative delegation in its most obnoxious form." *Id.*

¶10    The county also relies on *Brodner v. City of Elgin*, 420 N.E.2d 1176 (Ill. App. Ct. 1981), which we find helpful to our discussion. There, the City of Elgin adopted a municipal ordinance requiring applications for rezoning to be accompanied by the written consent of the owner of the property to be rezoned. Over the protests of several property owners, the city filed and adopted applications to rezone the owners' parcels. The owners sought a judicial declaration that the zoning amendments were invalid because the city had failed to obtain their consent. In upholding the trial court's dismissal of the complaint, the Illinois appellate court held that the owner consent provision was an unconstitutional delegation of the city's legislative zoning authority because it "confer[red] upon the owner of the property the absolute discretion to decide that no rezoning shall ever occur . . . despite the fact that the City [might] be effecting a comprehensive zoning plan in pursuit of the common good." *Id.* at 1178.

¶11         The central question under these cases in classifying whether a statute such as § 11-829(F) falls within the consent or waiver line of authority is whether the legislative body permissibly delegated its legislative authority. Because the owner consent provision in the subsection affects a rezoning's enactment as opposed to its execution, § 11-829(F) cannot be classified a waiver statute. *See Chicago Dryer Co.* Similar to the ordinance at issue in *Brodner* and the statute at issue in *Chicago Dryer Co.*, § 11-829(F) is a consent statute that unconstitutionally permits a property owner to withhold consent from such a proposed rezoning based solely on his or her self-interest. In doing so, the property owner is unaccountable for frustrating the public health, safety, or welfare because the county's board of supervisors has no recourse. *See* A.R.S. § 11-251(30); 11-802.

¶12         McLoughlin also argues, however, that the legislature intended § 11-829(F) to create a type of vested right in zoning classifications. Under the vested rights doctrine, a property owner who materially acts in reliance on an issued building or special use permit may continue to act in conformance therewith, notwithstanding arbitrary governmental withdrawal or cancellation of the permit. *Town of Paradise Valley v. Gulf Leisure Corp.*, 27 Ariz. App. 600, 557 P.2d 532 (1976). Although McLoughlin suggests no material reliance here and points to no occasion in which the legislature has by implication expanded this equitable doctrine, we need not decide the issue because the legislative history accompanying § 11-829(F)'s adoption contains no suggestion the subsection was intended to expand property owners' vested rights to include zoning classifications. As we have already discussed, the narrow breadth of the legislation instead demonstrates no legislative intent to withdraw counties' downzoning authority; by implication, as the trial court found, the legislature's central purpose in enacting § 11-829(F) was adoption of the

8

owner consent provision. Moreover, we question whether expanding the vested rights doctrine in this manner could be upheld as being substantially related to the public's health, safety, and welfare, *see Euclid*; *Rotter*, because the subsection's restriction applies only to county-initiated downzonings. Under such a system, any rights the legislature arguably might have intended to vest by enacting § 11-829(F) would be abrogated upon either a municipality's annexation of the owner's property or the incorporation of a municipality including that property.

**Severability**

¶13 McLoughlin also contends that, if the owner consent provision is unconstitutional, it is nonetheless severable from § 11-829(F), permitting the subsection's remainder to be enforced. We will not declare an entire statute unconstitutional if, after the unconstitutional portions have been excised, the remaining portions may be interpreted consistently with the constitution, *see Randolph v. Groscost*, 195 Ariz. 423, 989 P.2d 751 (1999), and it clearly appears the legislature would have enacted the remainder without the unconstitutional portion. *State Compensation Fund v. Symington*, 174 Ariz. 188, 848 P.2d 273 (1993).

¶14 As Pima County suggests, and as McLoughlin acknowledges, without the owner consent provision, the remainder of the subsection would prohibit all county-initiated downzoning. As we have already discussed, nothing in the legislative history suggests the legislature adopted § 11-829(F) intending to completely withdraw counties' zoning powers or to enact a total prohibition on county-initiated downzoning. Instead, we can only infer from the legislative history that the legislature's purpose in adopting the subsection was protecting property values through the owner consent provision. Because the legislature did not intend the subsection to be applicable without the owner consent provision, we need not determine whether the remainder of the

9

subsection may be independently enforced.  *See Symington*.  We accordingly agree with the trial court that the entire subsection is invalid.

**¶15**    Affirmed.

_____

                            J. WILLIAM BRAMMER, JR., Presiding Judge

CONCURRING:


_____
M. JAN FLÓREZ, Judge


_____
JOSEPH W. HOWARD, Judge