OPINION OF THE COURT
Lawrence E. Kahn, J.
In this CPLR article 78 proceeding, International Service Agencies (ISA) seeks to participate in the annual solicitation of charitable contributions from New York State employees through the State Employees Federated Appeals (SEFAs).
The members of ISA are CARE, Helen Keller International, International Human Assistance Programs, International Rescue Committee, Planned Parenthood-World Population, Project HOPE, and Save the Children. The respondents include the Commissioner of General Services, the Comptroller of the State of New York, the United Way of New York State, the National Health Agencies New York State Committee, the State Committee for SEFA Development, United Way of Northeastern New York, Inc., the Albany Area Health Council, the State Employees Federated Appeal Steering Committee for the Albany Area, United Way of Long Island, Inc., the National Health Agencies Long Island Committee, the State Employees Federated Appeal Steering Committee for Long Island, United Way of New York City, the United Way of TriState, Inc., and the National Health Agencies in New York City.
The basis for the relief sought is that officials of the State of New York have allegedly improperly delegated their authority to determine the membership of the SEFAs to the named private charitable organizations, and that the actions of these private organizations allegedly represent an arbitrary and capricious abuse of the public authority delegated to them, and thus, allegedly violate the laws of this State and ISA’s constitutional rights to due process and equal protection.
In New York State, charitable contributions are solicited by way of payroll deductions from Federal and State employees in two annual federated campaigns. Federal employees are solicited through the Combined Federal Campaign (CFG), and State employees are solicited through the State Employees Federated Appeal (SEFA). Participation in the Federal campaign is limited to three associations of charitable organizations: The United Way of America, National Health Agencies, and petitioner, ISA. Participation in SEFAs is limited only to *1073 the United Way and National Health Agencies, thus excluding petitioner ISA and giving rise to this proceeding.
The statutory authority for conducting federated community campaigns is found in section 6-a of the New York State Finance Law. Said section provides in pertinent part that: "The comptroller of the state is hereby authorized to deduct from the salary of any employee of the state such amount as such employee may specify in writing filed with the comptroller within the minimum and maximum amounts prescribed by the comptroller * * * for contribution to federated community campaigns for help, welfare, and recreational purposes on behalf of such employee and to the account of such employee with such federated community campaign. The comptroller is hereby authorized to make such rules and regulations governing * * * contributions to federated community campaigns as he deems necessary * * * As used in this section, 'federated community campaign’ means a charitable non-profit organization which solicits funds for distribution among a substantial number of charitable non-profit organizations, which has been approved as such by the commissioner of general services. The commissioner of general services shall approve no more than one federated community campaign within a county or group of counties in which such campaign is operating * * * The commissioner of general services shall have the power to make such reasonable rules and regulations not inconsistent with the law, as may be necessary for the exercise of his authority under this section.”
The petitioners allege that respondents O’Shea and Regan have failed to perform a duty imposed by law and have abused their administrative authority in an arbitrary and capricious manner, by improperly delegating their statutory authority to oversee SEFAs to the United Way and the National Health Agencies. They argue that section 6-a reflects a legislative intent to require careful supervision by authorized State officials. They assert that the Comptroller is charged with responsibility for insuring that contributions are made properly and within designated permissible levels. As proof of such legislative intent, they point to the commissioner’s responsibility for approving the federated community campaigns to which donations by payroll deduction are permitted. They further argue that the Legislature showed its concern for close supervision by expressly authorizing both respondents to supplement the statutory framework with rules and regulations.
*1074 The Comptroller by letter dated April 28, 1977 admits that "My office has no role in selecting the agencies to be included in the appeal.” The Commissioner of General Services by letter of April 29, 1977 admits that "The decision concerning ISA’s participation in the federated campaign must be made by the United Way.” These admissions purport to comply with section 6-a. This section is the commissioner’s statutory authorization to function with respect to charitable campaigns. Its clear language specifically requires him to "approve no more than one federated community campaign within a county or group of counties”. This, he has done. It is not contended that those chosen are not "a charitable non-profit organization which solicits funds for distribution among a substantial number of charitable non-profit organizations”. The statutory mandate, in this regard, has been fulfilled. •
However, although empowered to do so, respondent O’Shea has not promulgated regulations for the steps to be followed in setting forth the procedures by which inclusion in a SEFA may be determined. He has, if not overtly, then by default, delegated this responsibility to respondents, United Way of New York State and the National Health Agencies New York State Committee.
It is clear that delegations of public authority must be carefully circumscribed to insure that self-interest does not become the overriding consideration. (Seattle Trust Co. v Roberge, 278 US 116.) Petitioners argue that no standards or criteria for SEFA participation which are statutorily justified, or a regular process by which nonparticipating organizations may demonstrate their fulfillment of such standards have been established by the Comptroller and the commissioner. While the statute does not require either the Comptroller or the commissioner to establish a process for nonparticipating organizations to be included in the particular charitable nonprofit organization which is designated as a "federated community campaign”, petitioner argues that it has been deprived of liberty and property without due process in contravention of section 6 of article I of the State Constitution which prohibits a person from being deprived of liberty or property without due process of law. Specifically, it argues that the making of a voluntary contribution is in exercise of two separate liberties, freedom of expression, and freedom of association. (Buckley v Valeo, 424 US 1, 121-122.) It further argues that its property rights have been impaired by its *1075 exclusion from SEFAs in that its lawful business is charitable fund raising and the right to engage in a lawful business is within the protection of the due process guarantee (People v South Shore Amusement, 82 Misc 2d 892). They argue that their exclusion has been determined by private parties who have been delegated public authority unaccompanied by objective standards for its exercise. Private parties to which public authority has been delegated are subject to the same constitutional restraints as government officials. (Sharrock v Dell Buick-Cadillac, 45 NY2d 152.)
The statute in question delegates the responsibility of approval of a "federated community campaign” to the Commissioner of General Services. Where a proceeding "concerns not a legislative but an administrative grant of [an exclusive] privilege, more stringent standards are to be applied to the latter than the former because there is no presumption of constitutionality of administrative action.” (Matter of AFA Protective Systems v Crouchley, 63 Misc 2d 695, 698.) Even where there has been a delegation of authority to a private organization such as the case at bar, adequate standards must be set forth to pass constitutional muster. The case of Matter of Fink v Cole (302 NY 216) involves parallel issues and philosophies to the case at bar. Therein, the statute giving the Jockey Club the prerogative of denying racing licenses was challenged as an unconstitutional delegation of authority. The Court of Appeals held that the statute was in fact an unconstitutional abdication of public authority to a private party, and even more significantly, found that even if the delegation had been to a government agency, it would have been invalid for lack of standards.
The statute in question specifically authorizes the respondents to promulgate rules and regulations and standards in connection herewith. The Court of Appeals has recently had occasion to pass upon the exercise of discretion by an administrative head in an analogous case (Matter of Nicholas v Kahn, 47 NY2d 24). Therein, the court held (p 33): "the chairman was bound to articulate objective standards against which an ultimate determination could be measured * * * Inasmuch as there were no standards of that character set forth * * * the denial of petitioner’s application was arbitrary and capricious. The safeguard against arbitrary administrative action lies in the promulgation of adequate standards * * * to insure meaningful judicial review”.
*1076 A review of the pleadings and the exhibits attached thereto lead inexorably to the conclusion that the private charities which have been delegated the responsibility to determine inclusion in SEFAs have in fact no articulated procedure for the selection of a particular "federated community campaign”. An analogous situation presented itself in the State of New Jersey in the case of Group Health Ins. of N. J. v Howell (40 NJ 436), wherein there had been a delegation of authority to the State Medical Society for approving corporations which sought to transact business as a medical service corporation. In striking down this delegation, the court held (p 445) that: "a power to determine who shall have the right to engage in an otherwise lawful enterprise may not validly be delegated by the Legislature to a private body which, unlike a public official, is not subject to public accountability, at least where the exercise of such power is not accompanied by adequate legislative standards or safeguards whereby an applicant may be protected against arbitrary or self-motivated action on the part of such private body.”
It is clear then that the right of a charity to solicit funds under the auspices of State government is not an inconsequential one. It is not enough for United Way to argue that "any state employee may make a donation to ISA if he wishes.” The fact remains that State legislation has provided an opportunity for charities to solicit funds directly out of the weekly paycheck of State employees, and this opportunity cannot be treated lightly. It is the responsibility of every State official to carry out his statutory duties with absolute fairness. It is not enough for the Commissioner of the Office of General Services to simply note that he has met the statutory mandate of approving one nonprofit organization to solicit funds pursuant to section 6-a of the State Finance Law. The commissioner wishes to wash his hands of any involvement in the annual State solicitation campaign and urges this court to accept the fact that he has no responsibility or authority over the administration of such a charitable drive. In essence, ISA is confronted by State officials who claim they have no say in the matter and United Way, which pleads deference to the various local charities, who in turn refer petitioners back to the Comptroller et al., and after playing "Ring around the Rosey” for approximately two years, ISA finally got the message — no one had any intention of letting them share in the fruits of any charitable solicitation drive within State government. One *1077 can readily understand the reluctance of United Way to permit ISA to join in. Their own self-interest would dictate a policy of exclusion in order to maximize the amount of their own contributions.
Fortunately, the reins of government cannot be turned over to private interest groups to be utilized to preserve self-interests. The State payroll has been made available to charitable organizations for the solicitation of funds, and the participation of any charity must be determined on a rational and fair basis with clear standards established and followed. While the Commissioner of the Office of General Services belatedly offers a basis for the exclusion of ISA, to wit, the desire to serve local charitable needs as opposed to foreign charitable purposes, such a standard has never been properly established. If it were in fact so, the commissioner would have so advised ISA at its initial inquiry instead of sending ISA on a fruitless search for admission into the program. Moreover, the commissioner’s recent assertion that only local charities were meant to participate is inconsistent with his prior position that he has no responsibility or authority in this entire matter, since he placed the entire program in the hands of United Way.
While petitioners have no absolute right to participate in a SEFA, they do have the right to apply for admission. It is clear that their efforts have been fruitless to date because they have been bounced between the respondent State officials and the respondent local and State-wide charitable organizations with no specific articulated written procedure to be followed in the determination of their request to be included in SEFAs.
While this court is not passing upon the ultimate determination of their admittance thereto, it does find that the present procedure for determining the participation in State Employee Federated Appeals is arbitrary and capricious as a matter of law, in that there is no articulated objective standard promulgated therefor, either by respondent O’Shea, or the various individual private charitable respondents.
Accordingly, respondent O’Shea in his capacity as Commissioner of General Services, shall be directed to permit the conduct of only those SEFAs that have been approved by him after promulgation (either by said respondent O’Shea or pursuant to delegated authority under section 6-a of the New York State Finance Law) of procedures by which the issue of the participation of petitioners may be resolved through an *1078 articulated objective standard. Further, respondent Regan, in his official capacity as Comptroller, shall be enjoined from authorizing payroll deductions to any SEFA hereinafter conducted which has not been approved by the Commissioner of General Services pursuant to procedures to be promulgated pursuant hereto.