EASTMAN KODAK COMPANY, Plaintiff-Appellee, *v.* FAIR EMPLOYMENT PRACTICES COMMISSION, Defendant-Appellant.

Second District   No. 79-100

Opinion filed April 22, 1980.

William J. Scott, Attorney General, of Chicago (Moshe Jacobius, Assistant Attorney General, of counsel), for appellant.

David M. Stahl and John E. Cipriano, both of Isham, Lincoln and Beale, of Chicago, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

This case involves an appeal from a decision of the Fair Employment

Practices Commission (FEPC) which held that Eastman Kodak Company (Kodak) had failed to comply with the FEPC's rules and regulations and therefore was not eligible for government contracts. Kodak appealed under the Administrative Review Act, and the trial court reversed the FEPC's decision. The FEPC has appealed.

Companies doing business with the State of Illinois must comply with certain fair employment requirements as a condition precedent to being awarded public contracts. (Ill. Rev. Stat. 1977, ch. 48, par. 854.) The statute requires that the companies not commit unfair employment practices and that they take affirmative action to insure no unfair employment practice is committed; it also provides that no contract shall be awarded until the FEPC has certified that the employer has not violated its rules. The FEPC is also authorized to issue rules and regulations to enforce and administer the public contract provision. Ill. Rev. Stat. 1977, ch. 48, par. 854A.

Pursuant to its apparent statutory authority, the FEPC issued rules and regulations for the enforcement of the public contracts provision. The rules require the employer to examine various job classifications to determine if the company is underutilizing minorities. (Rules and Regulations, art. IV, §4.1(b).) Underutilization is to be determined by comparing the percentage of minorities in the employer's work force with the percentage of minorities within a reasonable recruitment area. (Rules and Regulations, art. IV, §4.2(a).) If the employer is underutilizing minorities, then the employer is required to take appropriate affirmative action to rectify this condition. Rules and Regulations, art. IV, §4.1(b).

Kodak submitted an employer report for its Oakbrook facility in September 1974 in order to be qualified for government contracts. The report stated that Kodak employed 722 people of whom 91 or 12.6 percent were minorities. The FEPC calculated a minority employment of 11.9 percent, as it classifies only black and Spanish people as minorities. Kodak defined its recruitment area to be all of Du Page County plus that portion of Cook County south of Devon Avenue, west of Harlem Avenue, and north of 95th Street. Kodak's facility is located approximately seven miles from the eastern border of the recruitment area and 17 miles from the area's western border. There are 4.3 percent minorities in this proposed recruitment area.

On October 28, 1975, the FEPC found Kodak to be in noncompliance for failing to submit an acceptable affirmative action program. In a hearing before an administrative law judge, the FEPC introduced evidence which showed the location of the facility within the recruitment area; that 47 percent of Kodak's employees resided outside the recruitment area; that 19 percent of Kodak's employees resided in the city of

Chicago (Kodak's witness stated that 23 percent of the employees lived in the city of Chicago); and that about 40 percent of the applicants for employment in the first six months of 1975 resided outside the recruitment area, and 13 percent of the applicants were Chicago residents. The FEPC then presented its conclusion that the Chicago standard metropolitan statistical area (SMSA), consisting of Cook, Lake, McHenry, Kane, Du Page and Will counties, is the appropriate recruitment area for Kodak.

Kodak's evidence showed that it employed 528 people in the Oakbrook facility at the end of 1975, of whom 15 percent were minorities. Only 350 employees were recruited "locally," of whom 8.2 percent were minorities. Kodak presented evidence that its efforts to recruit minorities from Chicago had been unsuccessful in the past; that in 1975, 33 percent of its new employees were minorities; that its turnover rate is less than 3 percent per year; and that only .6 percent of the city of Chicago's workers are employed in Du Page County. On October 6, 1976, the administrative law judge issued her recommended opinion that Kodak's recruitment area was unreasonable and that if Kodak failed to adopt the standards set forth by the FEPC, the order of noncompliance should stand.

A hearing was held before the FEPC and on August 17, 1977, the FEPC issued its order sustaining the administrative judge. It also ruled that it had the statutory authority to promulgate the rules and regulations in issue. Kodak sought administrative review, and on November 21, 1978, the circuit court reversed the FEPC on the ground that it had exceeded its power in establishing a recruitment area broader than the one Kodak established. The court also concluded that Kodak's recruitment area was reasonable. This appeal followed.

The first issue is whether the rules and regulations set forth by the FEPC were within the FEPC's statutory authority. Kodak contends that the FEPC had the authority to issue rules and regulations involving affirmative action, but only in order to prevent individual acts of discrimination. Kodak claims the promulgated rules exceed this authority since they are directed at preventing group discrimination.

The power to make rules and regulations must be granted by statute. (*Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 387 N.E.2d 320.) Furthermore, an agency may not expand its statutory authority in exercising its rule making authority. (*Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon.*) However, the grant of authority to an agency carries with it the power to do what is reasonably necessary to perform the powers and duties specifically conferred. (*Commonwealth Edison Co. v. Pollution Control Board* (1974), 25 Ill. App. 3d 271, 323 N.E.2d 84, *aff'd in part* (1976), 62 Ill. 2d 494, 343 N.E.2d 459.) In determining the scope of the

grant of authority, the purpose of the legislation must be considered. *Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon.*

The Fair Employment Practices Act (Ill. Rev. Stat. 1977, ch. 48, par. 851 *et seq.*) provides in section 4:

> "Every contract to which the State * * * is a party shall be conditioned upon the requirement that * * * the contractor * * * shall not commit an unfair employment practice in this State as defined in this Act, and *shall take affirmative action* to insure that no unfair employment practice is committed." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 48, par. 854.)

Section 4A of the Act grants the FEPC the authority to promulgate rules and regulations for the enforcement and administration of the public contract provision of the Act. (Ill. Rev. Stat. 1977, ch. 48, par. 854A.) Section 4A also provides:

> "No contract shall be awarded by the State to any employer found by the Commission to have violated its rules and regulations until the Commission shall certify that the violation has ceased."

The rules promulgated in reliance upon the statutory authority require employers to submit statistical reports with regard to their minority employees. If an employer has a lower percentage of minority employees than would reasonably be expected, based on their availability in the area from which the employer could reasonably be expected to recruit, then the employer is considered to be underutilizing minorities. (Rules and Regulations, art. IV, §4.2(a).) Where underutilization is found to exist, the employer is required to take affirmative action to rectify the underutilization. (Rules and Regulations, art. IV, §4.1(c).) The question then is whether the rules and regulations exceed the FEPC's statutory authority since they are directed at preventing class discrimination.

The public contract provision of the Fair Employment Practice Act discourages discriminatory employment practices by depriving discriminating employers of government contracts. Furthermore, the legislation seeks to prevent even indirect State participation in discriminatory practices. A reasonable means of meeting this goal would be to require employers to take affirmative action to prevent discrimination. Since individual acts of discrimination are often difficult to discover or prevent, the legislature could properly allow for measures to prevent their occurrence.

■■ We are unable to accept Kodak's position that the statute applies only to individual acts of discrimination. Although this is a State action, we note that the Federal rules define affirmative action as "specific steps to guarantee equal employment opportunity keyed to the problems and needs of members of minority groups, including, when there are

deficiencies, the development of specific goals and timetables ° ° °" (41 C.F.R. Sec. 60—1.40(a) (1979).) We do not believe that one could take *affirmative* action to prevent individual acts of discrimination without taking some positive steps to prevent discrimination to a class of people. For the reasons stated, we hold that the FEPC's rules and regulations here considered are within the authority granted by statute.

▮ Kodak next contends that the administrative law judge improperly placed the burden of proof on Kodak to prove the reasonableness of the recruitment area. Contrary to Kodak's assertion, the Act does not specifically provide which party has the burden of proof before the FEPC, but merely states that when a hearing is conducted on a fair employment complaint, a determination sustaining a complaint must be based upon a preponderance of the evidence. (Ill. Rev. Stat. 1977, ch. 48, par. 858.01(c).) The requirement goes to the amount of evidence which must support a decision of the FEPC, but does not indicate which party has the burden of persuasion. Generally the burden of persuasion is placed on the party seeking the relief. Here, Kodak initiated the proceedings by seeking prequalification and was the party who sought review of the agency's initial determination. Kodak should therefore have the burden of persuasion. However, even if it is assumed that the agency has the initial burden, once it has shown that the recruitment area is prima facie unreasonable, the burden would shift to the employer to rebut the FEPC's proof. This approach is followed in individual discrimination cases and by analogy the same procedure would seem to be appropriate here. See *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817.

In the instant cause, the FEPC's evidence indicated that the recruitment area was geographically lopsided, that 47 percent of the employees lived outside of the recruitment area, and that 19 to 23 percent of the employees resided in the city of Chicago. This would seem to be sufficient to sustain a prima facie showing of unreasonableness. The burden would then fall on Kodak to show that the recruitment area was, in fact, reasonable. This was apparently the procedure followed in the instant cause, and thus there was no impermissible shifting of the burden of proof.

Kodak next contends that the decision of the FEPC is against the manifest weight of the evidence. Before analyzing the sufficiency of the evidence, a preliminary question of the appropriate standard of review must be considered. Kodak contends that the appropriate standard for appellate review in employment discrimination cases is a preponderance of the evidence. This court recently noted that in reviewing the decisions of administrative agencies, the reviewing court must examine the record to decide whether the determination was proved by a preponderance of

the evidence and whether, in applying that standard, the agency's decision is against the manifest weight of the evidence. (*Board of Education v. Fair Employment Practices Com.* (1979), 79 Ill. App. 3d 446, 398 N.E.2d 619.) We restate our earlier view that the standard of review for decisions of administrative agencies is still manifest weight of the evidence.

The case most closely resembling the facts in the present cause is *Timken Co. v. Vaughan* (N.D. Ohio (1976), 413 F. Supp. 1183. In *Timken*, the employer had defined a recruitment area to be a 15 mile radius around its plant. As defined, the recruitment area contained .6 percent minorities. Twenty-five miles from the plant was a town which contained 15.1 percent minorities. The government concluded that the recruitment area should have been a 25-mile radius from the plant which would have produced a 3.5 percent minority rate. The company at that time employed 2.4 percent minorities. The administrative law judge found that the company's recruitment area was arbitrary and unreasonable and that it should have been a 25-mile radius. The employer was ordered to establish goals and timetables to correct the underutilization. The district court reversed the agency's decision noting that a recruitment area was meant to be the area within which the contractor could reasonably expect people to commute. The court noted that only 6 percent of the company's employees resided outside of the original recruitment area. Furthermore, none of the company's employees resided in the town which the government sought to include. Also, the court noted that although the town was only 25 miles away, it was serviced by a narrow two-lane highway which made commuting time 35 to 45 minutes.

Kodak contends that *Timken* calls for the same result in the present cause. However, the recruitment area in *Timken* was symmetrical, extending the same distance in all directions. The recruitment area in the present cause is substantially disproportionate in the westerly direction. In *Timken* only 6 percent of the employees resided outside the hiring area, whereas in the present cause 47 percent of Kodak's employees reside outside the recruitment area. Finally, in *Timken* none of the employees resided in the distant town, whereas in this cause 23 percent of Kodak's employees reside in Chicago and areas specifically excluded from the recruitment area. Although the cases are factually similar, the result in *Timken* does not necessarily call for the same result in this cause. See also *Abron v. Black & Decker Manufacturing Co.* (D. Md. 1977), 439 F. Supp. 1095, 1103-06.

As noted before, the FEPC's evidence tends to establish that Kodak's recruitment area is prima facie unreasonable. In response, Kodak argues that it does not wish to include the city of Chicago because of the distance

required in traveling to Oakbrook. Kodak's witnesses stated that the farther an employee lives from his place of employment, the more likely he is to be absent from work. While this conclusion is self-evident, it does not explain why the recruitment area extends 17 miles in one direction and only seven in the other. Although Kodak is willing to recruit 17 miles west of its facility, there has been no showing of a reasonable basis why it should not recruit a similar distance east of its facility. Furthermore, the fact that 19 to 23 percent of its workers reside in Chicago totally refutes its contentions that people will not travel from Chicago to Oakbrook. Kodak points out that one-third of the Chicago residents were employees who moved when the facility moved from Chicago to the suburbs. However, this fails to explain the continued employment of other Chicago residents. Kodak also presented evidence that only .6 percent of the workers in Chicago were employed in Du Page county. However, this statistic is almost totally meaningless. Kodak's facility is located in the far eastern section of Du Page county. The fact that few Chicago residents are employed throughout the entire Du Page county area fails to demonstrate that Chicago residents would not be willing to go to Kodak's facility near the eastern edge of the county. Kodak also introduced evidence tending to show that it did not presently discriminate in regard to hiring. However, that question is not relevant in this cause since the only issue is the reasonableness of Kodak's recruitment area. In our view, the evidence is sufficient to support the FEPC's conclusion that Kodak's recruitment area is unreasonable.

We note, however, that while the FEPC properly determined that Kodak's recruitment area was not reasonable, the record is devoid of any authority under which the FEPC may impose a recruitment area on an applicant. Its sole authority in this regard is to approve or disapprove the applicant's proposed recruitment area. Therefore, while the FEPC's decision was correct that Kodak's proposed recruitment area was unreasonable, its establishment of a recruitment area which Kodak had not proposed is not authorized.

Kodak's final argument is that the rules and regulations require an impermissible reverse discrimination and preferential hiring of minorities which violates title VII of the 1964 Civil Rights Act (42 U.S. C. §2000e—2(a)(1976)) and the Illinois Fair Employment Practices Act (Ill. Rev. Stat. 1977, ch. 48, pars. 851, 853(a)). This question is not ripe for review. The FEPC has not established any goals or timetables with respect to Kodak. Thus, even if the goals and timetables are considered requirements as Kodak characterizes them, no orders have been issued with respect to Kodak's future hiring practices. On remandment to the FEPC for a new determination of a recruitment area and a redetermination of utilization

of minorities, it is entirely possible that Kodak will be found to be in compliance. If this result occurs, then the question of the legality of the goals and timetables will never arise.

For the reasons stated, we affirm that part of the trial court's order reversing the FEPC's establishment of a recruiting area; we reverse that part of the trial court's order vacating the FEPC's corrected order of noncompliance of October 28, 1975, and holding that Kodak's recruitment area was reasonable.

Affirmed in part, reversed in part.

SEIDENFELD, P. J., and VAN DEUSEN, J., concur.