THE PEOPLE OF THE STATE OF ILLINOIS, Respondent, v. THE POLLUTION CONTROL BOARD, Respondent (Santa Fe Park Enterprises, Inc., Petitioner).

First District (4th Division)   No. 84—126

Opinion filed December 27, 1984.—Rehearing denied January 23, 1985.

Richard J. Kissel, Jeffrey C. Fort, and Frederick L. Moore, all of Martin, Craig, Chester & Sonnenschein, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (William J. Barzano, Jr., Assistant Attorney General, of Chicago, of counsel), for the appellees.

JUSTICE JIGANTI delivered the opinion of the court:

This appeal involves the constitutionality of an enactment by the Illinois General Assembly which excludes from the regulatory purview of the Illinois Pollution Control Board (the Board) noise emissions emanating from sporting events. The People of the State of Illinois, represented by the Attorney General, initiated this action in March, 1976, by filing with the Board a complaint against Santa Fe Park Enterprises, Inc. (Santa Fe), a corporation owning and operating a motor racing facility, alleging that Santa Fe had violated through certain noise emissions section 24 of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, par. 1024) and Pollution Control Board Rule 102 (35 Ill. Adm. Code 900.102).

During the pendency of this proceeding, the Illinois General Assembly, on two separate occasions, enacted legislation intended to remove from the Board's jurisdiction complaints concerning noise emissions from sporting events, and particularly to prohibit enforcement of the Board's noise regulations applicable to motor sports facilities. When the first exemption statute became effective in October 1978, the Board dismissed the instant complaint and the Attorney General appealed. In that case, *People v. Pollution Control Board* (1980), 83 Ill. App. 3d 802, 404 N.E.2d 352, this court held the exemption statute unconstitutional as an improper delegation of law-making powers and remanded the cause for further proceedings.

In September, 1981, the General Assembly enacted Public Act

82—654, the statute involved in the instant appeal. Public Act 82—654 served to exclude from the Board's regulatory purview "organized amateur or professional sporting activity," which includes "motor sports." Thereafter, on September 23, 1983, the Board issued an order wherein it declared that Public Act 82—654 amounted to an unreasonable limitation of the Illinois Constitution's article XI, section 2, right to a healthful environment, and thus was unconstitutional. Santa Fe then, pursuant to Supreme Court Rule 308 (87 Ill. 2d R. 308), filed application for an interlocutory appeal to this court, raising the following certified question of law on appeal:

"Whether the Board correctly determined that Public Act 82—654 is a constitutionally impermissible legislative enactment."

The source of law which gives rise to the instant dispute is found in article XI of the Illinois Constitution of 1970. (Ill. Const. 1970, art. XI.) Article XI provides:

"Sec. 1. Public Policy — Legislative Responsibility

The public policy of the State and the duty of each person is to provide and maintain a healthful environment for the benefit of this and future generations. The General Assembly shall provide by law for the implementation and enforcement of this public policy.

Sec. 2. Rights of Individuals

Each person has the right to a healthful environment. Each person may enforce this right against any party, governmental or private, through appropriate legal proceedings subject to reasonable limitation and regulation as the General Assembly may provide by law."

In order to implement the public policy to provide and maintain a healthful environment, the General Assembly enacted the Environmental Protection Act (EPA). (Ill. Rev. Stat. 1979, ch 111½, par. 1001 *et seq.*) The EPA provides for the creation of the Pollution Control Board to define and regulate the environmental control standards for the State. (Ill. Rev. Stat. 1979, ch. 111½, par. 1005.) Further, the Board derives its jurisdiction to entertain complaints such as the original complaint from section 24 of the EPA, which states:

"No person shall emit beyond the boundaries of his property any noise that unreasonably interferes with the enjoyment of life or with any lawful business or activity, so as to violate any regulation or standard adopted by the Board under this Act." Ill. Rev. Stat. 1979, ch. 111½, par. 1024.

The Board's noise regulations, which directly form the basis for the instant complaint, were established pursuant to section 25 of the EPA (Ill. Rev. Stat. 1979, ch. 111½, par. 1025), which reads in pertinent part:

"The Board *** may adopt regulations prescribing limitations on noise emissions beyond the boundaries of the property of any person and prescribing requirements and standards for equipment and procedures for monitoring noise and the collection, reporting and retention of data resulting from such monitoring.

The Board shall, by regulations under this Section, categorize the types and sources of noise emissions that unreasonably interfere with the enjoyment of life, or with any lawful business, or activity, and shall prescribe for each such category the maximum permissible limits on such noise emissions."

When enacted in 1981, Public Act 82—654 served to amend EPA sections 25 and 3(v) so as to exclude certain sporting and entertaining events from the Board's noise regulations. Public Act 82—654 amended section 25 to provide:

"No Board standards for monitoring noise or regulations prescribing limitations on noise emissions shall apply to any organized amateur or professional sporting activities ***." (Ill. Rev. Stat. 1983, ch. 111½, par. 1025.)

Public Act 82—654 further amended section 3(v) to define organized amateur or professional sporting activity as:

"[A]n activity or event carried out at a facility by persons who engaged in that activity as a business or for education, charity, or entertainment for the general public, including all necessary actions and activities associated with such an activity. This definition includes, but is not limited to skeet, trap, or shooting sports clubs in existence prior to January 1, 1975, organized motor sports, and sporting events organized or controlled by school districts, units of local government, state agencies, colleges, universities or professional sports clubs offering exhibitions to the public." (Ill. Rev. Stat. 1983, ch. 111½, par. 1003(aa).)

As a result of these amendments, the Board, in response to a constitutional challenge, issued an order as follows:

"The Board finds that P.A. 82—654's removal of most sporting events noise from the purview of the act amounts to an unreasonable (as opposed to a permissibly reasonable) limita-

tion of the Article XI, Section 2 enforcement of the right to a healthful environment. Deletion of the sole statutory cause of action when coupled with elimination of the Board Forum, which can provide speedier and less costly adjudication than can most overburdened circuit courts, renders the right to combat this type of noise pollution virtually meaningless."

On appeal, Santa Fe contends that this court should reverse and vacate the order of the Board for either of two reasons. First, Santa Fe argues that the Board is without authority to decide the constitutionality of the instant statute and thus the Board's order is void. Alternatively, Santa Fe argues that even if the Board can determine the constitutionality of Public Act 82—654, there is little doubt that Public Act 82—654 is a valid exercise of the General Assembly's legislative power.

With respect to Santa Fe's first argument on appeal, this court finds that we have jurisdiction and are in a position to decide the instant matter on its merits and therefore we believe it unnecessary to address the argument regarding the Board's authority.

■■ ■ It is fundamental that the Constitution is not regarded as a grant of powers to the legislative department, but every subject within the scope of civil government rests in the General Assembly unless inhibited by some constitutional provision. (*Droste v. Kerner* (1966), 34 Ill. 2d 495, 217 N.E.2d 73.) Moreover, the General Assembly is presumed to have acted in a constitutional manner, and its legislation may be overturned only if it is conclusively established to be arbitrary and unreasonable. (*Laffoon v. Bell & Zoller Coal Co.* (1976), 65 Ill. 2d 437, 359 N.E.2d 125.) Neither the Board nor the court may inquire into the wisdom and propriety of the legislature's act and cannot strike down an act because of a disagreement with the policy choice made by the legislature. The court should not substitute its judgment for that of the General Assembly. *Pozner v. Mauck* (1978), 73 Ill. 2d 250, 383 N.E.2d 203.

The intent of the framers of article XI of the 1970 Illinois Constitution is ascertainable through the committee comments and the recorded proceedings of the constitutional debates. The comments reveal that the pivotal point of article XI was standing:

"The Committee emphasizes that this Section affords individuals the opportunity to seek relief. It wants to be very clear that it does not, by this Section (or by any Section in this Article for that matter) create or establish a new remedy. Nor does this Section assume the individual's ability to prove a violation of his right. It merely declares that individuals have

'standing' to assert violations of his right." (Ill. Ann. Stat., 1970 Const., art. XI, sec. 2, Constitutional Commentary, at 276 (Smith-Hurd 1971).)

Furthermore, Chairman McCracken indicated that the Committee did not intend article XI to create any new substantive rights; it merely intended to create standing for individuals to represent the public interest. (4 Record of Proceedings, Sixth Illinois Constitution 3008, 3014 (1970).) Expanding on the concept of standing, the Committee stated:

"Because the wrong here has reached crisis proportions and because it affects individuals in so fundamental a way, the Committee is of the view that the 'special injury' requirement for standing is particularly inappropriate and ought to be waived. Section [2], therefore, allows the individual the opportunity to prove a violation of his right even though that violation may be a public wrong, or one common to the public generally." Ill. Ann. Stat., 1970 Const., art. XI, sec. 2, Constitutional Commentary, at 277 (Smith-Hurd 1971).

The right of standing was not, however, viewed as unlimited but was "subject to reasonable limitation and regulation as the General Assembly may provide by law." In describing the focus of the above limitation, the Committee reported:

"The term 'subject to reasonable limitation and regulation by law' is included to emphasize not only the leadership function the Committee envisions for the Legislature in this [Article] but also the power of the General Assembly to reasonably limit and regulate the declared ability of the individual to enforce his right ***.

The Committee decided not to specify what it thought were the appropriate limits of legislative limitation and regulation. Rather, it selected the word 'reasonable' so as to allow for flexibility and adjustment in the future. The power, of course, could not be exercised so as to effectively deprive the individual of his standing." Ill. Ann. Stat., 1970 Const., art. XI, sec. 2, Constitutional Commentary, at 277-78 (Smith-Hurd 1971).

■ In the instant matter, the question for this court's resolution is whether the Board correctly determined that Public Act 82—654 is a constitutionally impermissible legislative enactment. We believe that the Board erred in finding it unconstitutional. The Attorney General, in support of the Board's position, contends that article XI of the 1970 Illinois Constitution provided standing, subject to rea-

sonable limitations by the General Assembly, to individuals seeking redress for violations of their right to a healthful environment and that together with the EPA, individuals were able to exercise effective publicly enforceable rights to protect against environmental harm instead of what was previously ineffective privately enforceable rights. The Attorney General argues that Public Act 82—654 effectively deprived individuals of the standing envisioned by section 2 of article XI because without the power of the Board to regulate organized amateur and professional sporting events, the standing contemplated under article XI for noise pollution caused by such major noise sources evaporates.

This argument misconstrues the meaning of standing. As was revealed through the committee comments and the constitutional debates, the intent of article XI was to remove the special injury requirement for standing, thus enabling an individual the opportunity to obtain a remedy for a public wrong without depending on the Attorney General to initiate the action. (See Ill. Ann. Stat., 1970 Const., art. XI, sec. 2, Constitutional Commentary, at 276-78 (Smith-Hurd 1971).) Article XI was drafted to ensure standing, not to create substantive causes of action. (See *Morford v. Lensey Corp.* (1982), 110 Ill. App. 3d 792, 442 N.E.2d 933.) Public Act 82—654 does not limit the ability of an individual to sue in the public interest to remedy environmental harm caused by noise pollution, but rather simply removes sporting event noise from the Board's regulatory regime. As was indicated in article XI and as the court in *Morford* observed, the General Assembly was given the power to regulate and limit enforcement of the individual's right to a healthful environment. *Morford v. Lensey Corp.* (1982), 110 Ill. App. 3d 792, 797, 442 N.E.2d 933.

In order for this enactment by the General Assembly to be unconstitutional it must either be prohibited by article XI or any other constitutional provision, or it must be arbitrary and unreasonable. Otherwise, this legislative act will be presumed to be valid. (See *Laffoon v. Bell & Zoller Coal Co.* (1976), 65 Ill. 2d 437, 359 N.E.2d 125.) The Attorney General's deprivation of standing argument has failed to convince this court that Public Act 82—654 is prohibited by article XI. Further, the Attorney General has not demonstrated to this court the arbitrariness and unreasonableness of the instant statute. Effectively, what the Attorney General is asserting is that it questions the wisdom and propriety of the General Assembly's removal of noise pollution from sporting events from the EPA. This is an assertion this court cannot consider. See *Pozner v. Mauck* (1978),

73 Ill. 2d 250, 383 N.E.2d 203.

Lastly, the Attorney General contends that even if this court finds Public Act 82—654 not to be constitutionally infirm under article XI, we can still affirm the Board's order based on two additional constitutional arguments that were raised before the Board, but were left unresolved. This contention is incorrect.

The terms of Rule 308 (87 Ill. 2d R. 308) provide an exception to the general rule that an appeal may be taken only from final judgments of the circuit court (87 Ill. 2d R. 301). The Illinois Supreme Court has indicated that such appeals are to be allowed only in certain "exceptional" circumstances. (See *People ex rel. Mosley v. Carey* (1979), 74 Ill. 2d 527, 387 N.E.2d 325, *cert. denied* (1979), 444 U.S. 940, 62 L. Ed. 2d 306, 100 S. Ct. 292.) Thus, Rule 308 should be strictly construed and sparingly exercised. An appeal thereunder should be limited to the question certified by the trial court. *Getto v. City of Chicago* (1981), 92 Ill. App. 3d 1045, 416 N.E.2d 1110.

In the instant case, the question of law certified by the Board was "whether *the Board* correctly determined that Public Act 82—654 is a constitutionally impermissible legislative enactment." (Emphasis added.) The Board's order reflected an opinion that Public Act 82—654 was "an unreasonable (as opposed to permissibly reasonable) limitation of the article XI, section 2 enforcement of the right to a healthful environment." As was discussed above, this court does not find Public Act 82—654 to be an unreasonable limitation of article XI. Accordingly, because we should limit our review to the question certified and not to additional issues possibly within the subject matter of the question certified, we do not deem it appropriate to address the two additional unresolved constitutional arguments asserted by the Attorney General.

Based on the foregoing discussion, the Board's order is vacated and this matter is reversed and remanded for further proceedings.

Reversed and remanded.

JOHNSON and ROMITI, JJ., concur.