THE CITY OF SPRINGFIELD, Petitioner, v. RONALD CARTER *et al.*, Respondents.

Fourth District No. 4—88—0204

Opinion filed June 8, 1989.

James K. Zerkle, Corporation Counsel, and Feldman & Wasser, both of Springfield (Howard W. Feldman and Fredric Benson, Special Assistant Corporation Counsel, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Valerie J. Peiler, Assistant Attorney General, of Chicago, of counsel), for respondents.

JUSTICE KNECHT delivered the opinion of the court:

On June 23, 1983, the Human Rights Commission (Commission) entered an order finding the Springfield police department's promotional examination was discriminatory and directing certain relief. (*In re Carter*, 9 Ill. Hum. Rights Comm'n Rep. 164 (1983).) In October 1986, complainants filed motions for attorney fees and enforcement of the 1983 order. The Commission remanded the cause to the administrative law section for a report on the facts in dispute. The administrative law judge (ALJ) issued a report to the Commission, and the respondent City of Springfield (City) filed objections claiming the Commission was without jurisdiction to enforce its 1983 order since, by its terms, it was not a final order. The 1983 order stated in pertinent part:

> "(7) That complainants' attorney submit to the Commission within 28 days a petition for attorneys fees and supporting affidavit setting forth in detail the reasonable number of hours expended in this case and counsel's hourly billing rate. Failure to submit this documentation will be considered to be a waiver of the fee request. Respondent shall have 28 days from the receipt of such information to file its response. The question of attorneys fees will be taken under advisement and a Supplemental Order will issue. This matter will not be considered final for purposes of review under Article III of the Code of Civil Procedure until the Commission has issued its Supplemental Order." (*Carter*, 9 Ill. Hum. Rights Comm'n Rep. at 168.)

Upon consideration, the Commission agreed. Accordingly, the Com-

mission denied complainants' motion for fees as waived, denied the motion for enforcement as premature, purported to make the 1983 order final and enforceable, and directed the City to report to the Commission within 30 days the steps taken to comply with its supplemental order finalizing its 1983 order. (*In re Carter*, ＿＿ Ill. Hum. Rights Comm'n Rep. ＿＿ (March 8, 1988, HRC Nos. 1978SF0184, 1978SF0193, 1979SF0023, 1979SF0045).) The City appeals, challenging portions of the relief granted as void as (1) beyond that authorized by the Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1987, ch. 68, par. 1—101 *et seq.*); and (2) an impermissible delegation of the City's legislative power to make employment-related decisions.

The underlying facts are as follows.

In February 1978, the City administered a promotional examination to fill vacancies in the position of sergeant in its police department. The written examination was prepared and administered by an outside consulting firm, Police Consultants of Hillside, Illinois. Complainants were black police officers for the City in the rank of patrolman when they took the examination. Complainants Carter, Pettit, and Crump failed the examination; Schluter passed.

In the summer of 1978, complainants filed charges of discrimination against the City with the Illinois Fair Employment Practices Commission (now Department of Human Rights) (Department) complaining the promotional examination was not validated. On November 5, 1980, the Department filed a complaint of civil rights violation, alleging the City discriminated against complainants by administering a sergeant's promotional examination which had an adverse impact on black examinees.

Complainants and the City stipulated the results of the promotional examination were as follows: 67 candidates took the examination; 57, or 85%, were Caucasian, and 10, or 15%, were black. Of the 67 who took the examination, 49 passed, and 45, or 92%, were Caucasian, and 4, or 8%, were black. The passage rate for Caucasians was 79% while the passage rate for blacks was 40%. Two of the four blacks who passed the examination, including complainant Schluter, were promoted prior to the expiration of the eligibility list in May 1981. In addition, complainant Carter was appointed to the position of deputy chief.

On October 28, 1982, the ALJ issued his recommended order and decision. The ALJ found the City's promotional examination had an adverse impact on blacks based upon the Equal Employment Opportunity Commission's (EEOC's) Uniform Guidelines on Employee Selection Procedures. (29 C.F.R. §1607.1 *et seq.* (1982).) Under section

1607.4(D) of the guidelines, a selection rate for any group which is less than four-fifths (or 80%) of the rate for the group with the highest rate would generally be regarded by Federal enforcement agencies as evidence of adverse impact. (29 C.F.R. §1607.4(D) (1982).) Application of the four-fifths rule to the instant case results in the sergeant's examination having a disparate impact on blacks if their passage rate was less than 63.2%. Because the actual passage rate of blacks was 40%, the ALJ found an adverse impact on black examinees. The City argued the results of the test were not statistically significant due to the small number of blacks who took the examination. The ALJ disagreed, stating such statistics could be considered, especially with nonstatistical evidence of adverse impact such as the use of psychological tests.

The ALJ found further the examination was not job related because it was based on the duties of Peoria, Illinois, sergeants, whose duties differed significantly from those of the City's sergeants. Finally, the ALJ found the need to give a validated examination was not excused under EEOC guidelines because the City's ongoing study, designed to produce evidence of validation, was discontinued when funding through the Illinois Law Enforcement Commission was terminated.

With respect to relief, the ALJ refused to recommend the promotions made from the eligibility list resulting from the examination be set aside because there was no evidence of intentional discrimination. He did, however, make certain recommendations with respect to the relief which should be granted. See *Carter*, 9 Ill. Hum. Rights Comm'n Rep. at 183-84.

On June 23, 1983, the Commission entered its order and decision affirming the recommended order and decision of the ALJ and sustaining the complaints. The Commission directed the City to discontinue use of the eligibility list established as a result of its February 1978 promotional examination in filling vacancies in the position of sergeant; cease discriminating on the basis of race in the application of terms and conditions of employment; clear from its personnel records on complainants all references to the filing of these charges, and the subsequent disposition thereof; report to the Commission, within 90 days following the entry of its order, the steps taken to comply with the order (*Carter*, 9 Ill. Hum. Rights Comm'n Rep. at 168); and, most important for the issues considered on this appeal:

> "(4) That respondent immediately establish a promotional policy for filling vacancies in the position of sergeant which is non-discriminatory and affords complainants the opportunity to

qualify for the position of sergeant under such policy. To the extent that respondent has adopted a new examination, respondent shall immediately begin an impact and validation study of the new examination. The parties shall agree upon an expert, acceptable to both sides, to conduct such study. Respondent shall bear the cost of the study;

* * *

(8) The parties shall agree among themselves regarding appropriate interim relief with respect to the method for choosing sergeants to fill vacancies which occur between the date of the Commission Order and respondent's completion of an impact and validation study of its examination for sergeant. In the event that the parties are unable to agree upon interim relief, the procedures shall be determined by the Commission." (*Carter*, 9 Ill. Hum. Rights Comm'n Rep. at 168-69.)

Contrary to the Commission's order, complainants' attorney Donald Jackson did not submit his fee petition within 28 days, but rather submitted it more than three years later, on October 10, 1986. Also, the City did not submit its report to the Commission within 90 days following the entry of the order and decision or at any time thereafter. At approximately the same time, complainants filed a motion for enforcement of the order and decision.

On December 22, 1986, the Commission entered an order referring complainants' motion for enforcement to the ALJ for fact finding. The ALJ issued his report to the Commission on May 18, 1987.

Finally, on March 8, 1988, the Commission entered its supplemental order and decision. It denied complainants' motion to enforce the 1983 order on the basis that the Commission had no jurisdiction to enforce its order and decision because, according to complainants, the order and decision had not, by its terms, been made final. The Commission denied the belated request for attorney fees as untimely. Last, the Commission stated its order and decision of June 23, 1983, is final, enforceable, and appealable. (*Carter*, ____ Ill. Hum. Rights Comm'n Rep. ____ (March 8, 1988, HRC Nos. 1978SF0184, 1978SF0193, 1979SF0023, 1979SF0045).) The City appealed directly to this court pursuant to section 8—111 of the Act (Ill. Rev. Stat. 1987, ch. 68, par. 8—111), without first seeking rehearing by the Commission.

Complainants filed a motion to dismiss the City's appeal, arguing the City has not exhausted its administrative remedies and the Commission's order is not final. We first consider the motion to dismiss.

## I

Complainants argue the Commission's March 1988 order is not final for purposes of appeal because (1) the order is subject to the rehearing provision of the Act (Ill. Rev. Stat. 1987, ch. 68, par. 8—107(F)) and the City has not availed itself of the rehearing procedure; and (2) paragraphs eight and nine of the order contemplate further action by the parties and the Commission.

On the first point, complainants rely on *Consolidation Coal Co. v. Department of Labor* (1985), 138 Ill. App. 3d 541, 485 N.E.2d 1102, for the proposition if there is an agency rule or statute which provides for rehearing, an agency decision is not appealable until (and, apparently, unless) the aggrieved party requests rehearing and his petition is denied.

Section 3—101 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 3—101) provides in pertinent part:

"In all cases in which a statute or a rule of the administrative agency requires or permits an application for a rehearing or other method of administrative review to be filed within a specified time *** *and* an application for such rehearing or review is made, no administrative decision of such agency shall be final as to the party applying therefor until such rehearing or review is had or denied." (Emphasis added.)

Section 8—107(F) of the Act states, in pertinent part:

"(1) Within 30 days after service of the Commission's order, a party *may* file an application for rehearing before the full Commission. ***

(2) Applications for rehearing shall be viewed with disfavor, and may be granted, by vote of 6 [of 15] Commission members, only upon a clear demonstration that a matter raises legal issues of significant impact or that three-member panel decisions are in conflict." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 68, pars. 8—107(F)(1), (F)(2).)

No application for rehearing was filed in the case before us. We must determine whether the language of section 3—101 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 3—101), read in light of section 8—107(F)(1) of the Act (Ill. Rev. Stat. 1987, ch. 68, par. 8—107(F)(1)), requires application for rehearing before judicial review, or whether a party may elect to pursue judicial review without seeking rehearing.

■ Ordinarily, a party aggrieved by an administrative decision must exhaust its administrative remedies before seeking judicial relief. (*Phillips v. Graham* (1981), 86 Ill. 2d 274, 427 N.E.2d 550.) The exhaustion of administrative remedies doctrine allows for develop-

8

ment of the facts before the agency and use by the agency of its expertise, while permitting the aggrieved party the opportunity to succeed before the agency. *Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358, 326 N.E.2d 737, 742.

In *Danison v. Paley* (1976), 41 Ill. App. 3d 1033, 355 N.E.2d 230, this court rejected the argument that an aggrieved party was *required* to file a petition for rehearing before he could be deemed to have exhausted his administrative remedy. The court so held in construing section 1 of the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 (now Ill. Rev. Stat. 1987, ch. 110, par. 2—101)), in light of Rule 11.5 of the Urbana Civil Service Commission, which allowed petitions for rehearing to be filed within 30 days. The *Danison* court reasoned:

> "Defendant cites *Oliver v. Civil Service Com.* (1967), 80 Ill. App. 2d 329, 224 N.E.2d 671. There is language in that case which supports defendant's position. However, that language is clearly dicta, as the agency in question had no provision for rehearing.
>
> By the express language of section 1 of the Administrative Review Act, an administrative decision is final unless a rule of the agency permits an application for rehearing to be filed *and* such application is filed. Here plaintiff did not file such an application. The trial court did not err by denying the defendant's motion to dismiss.
>
> A party may seek administrative review only after a final decision by the agency. In this way all the facts are set before the agency which may then utilize its expertise. If a party succeeds before the agency, judicial review is unnecessary. (*Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 358, 326 N.E.2d 737, 741-42.)" (Emphasis in original.) *Danison*, 41 Ill. App. 3d at 1036-37, 355 N.E.2d at 233.

Accord *Jackson Park Yacht Club v. Department of Local Government Affairs* (1981), 93 Ill. App. 3d 542, 548-49, 417 N.E.2d 1039, 1044-45 (appeal from decisions of defendant Department disapproving 1978 real estate exemptions granted by the Board of Appeals of Cook County).

Although not cited by the parties, we are aware the first district has held to the contrary in *Castaneda v. Human Rights Comm'n* (1988), 175 Ill. App. 3d 1085, 530 N.E.2d 1005, *aff'd* (1989), 132 Ill. 2d 304. There, construing section 3—101 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 3—101) in light of section 8—107(F)(1) of the Act (Ill. Rev. Stat. 1987, ch. 68, par. 8—107(F)(1)), although citing

*Danison* and *Jackson Park Yacht Club* as contrary authority, the court concluded:

> "[T]he weight of authority and, in our judgment, the better authority holds that '[i]f there is an agency rule or statute which provides for a rehearing, then an agency decision is not appealable until the aggrieved party requests rehearing and his petition is denied.' (*Consolidation Coal Co. v. Department of Labor* (1985), 138 Ill. App. 3d 541, 544, 485 N.E.2d 1102. Accord *Hoffman v. Department of Registration & Education* (1980), 87 Ill. App. 3d 920, 924, 410 N.E.2d 291; *Oliver v. Civil Service Comm'n* (1967), 80 Ill. App. 2d 329, 333, 224 N.E.2d 671 [,*appeal denied* (1967), 36 Ill. 2d 631, 224 N.E.2d 671]. See also *Reiter v. Neilis* (1984), 125 Ill. App. 3d 774, 778, 466 N.E.2d 696 [,*appeal denied* (1984), 101 Ill. 2d 587, 466 N.E.2d 696]; *Condell Hospital v. Health Facilities Planning Board* (1987), 161 Ill. App. 3d 907, 929-30, 515 N.E.2d 750 [,*aff'd* (1988), 124 Ill. 2d 341, 530 N.E.2d 217].)" (*Castaneda,* 175 Ill. App. 3d at 1087, 530 N.E.2d at 1006.)

The *Castaneda* court dismissed the petition for review, although no petition for rehearing had been filed with the Commission (and the time for doing so has long since passed), citing the doctrine of exhaustion of administrative remedies.

In *Danison,* this court distinguished *Oliver* as citing exhaustion of administrative remedies principle in *dicta.* The same may be said of *Hoffman* (agency rules failed "to provide any specific right or obligation to seek rehearing of an otherwise final agency decision" (*Hoffman,* 87 Ill. App. 3d at 925, 410 N.E.2d at 294)) and *Reiter* (neither rezoning ordinance nor procedural rules for zoning board of appeals provided for rehearing (*Reiter,* 125 Ill. App. 3d at 778, 466 N.E.2d at 699)). *Reiter,* incidentally, cited *Danison* for this principle.

In *Consolidation Coal,* the Department of Labor found the company's employees were not ineligible for unemployment compensation benefits, and Consolidation Coal filed for reconsideration. The Department thereafter determined its decision was in accord with law and would not be changed. Consolidation then sought administrative review and the circuit court affirmed. On appeal, the Department of Labor argued the circuit court was without jurisdiction because the complaint was not timely filed in the circuit court. The appellate court agreed, ruling Consolidation's complaint for administrative review was not timely and the circuit court had been without jurisdiction to decide the case other than to dismiss it. The court held section 2 of the Administrative Review Act implicitly required some specific inde-

pendent authorization for objections or rehearing, and did not, standing alone, constitute such authorization. Evidently there was no statutory authority for rehearing there.

*Condell Hospital,* involving numerous parties and procedural machinations, is also distinguishable. The Condell plaintiffs filed a request for reconsideration, which was denied. Referring to section 3—101 of the Code, the supreme court stated:

> "The language 'as to the party applying therefor' must mean, if it means anything at all, that *final orders remain final for those parties who do not apply for reconsideration, or whose applications are no longer pending.*" (Emphasis added.) *Condell Hospital,* 124 Ill. 2d at 366, 530 N.E.2d at 229.

Further, we note that the United States Supreme Court has held an enabling statute similar to section 8—107(F)(1) of the Act did not require a rehearing be pursued before judicial review is sought. (*Levers v. Anderson* (1945), 326 U.S. 219, 222, 90 L. Ed. 26, 29, 66 S. Ct. 72, 73.) There, the petitioner's permit to operate a wholesale liquor business under the Federal Alcohol Administration Act was annulled by an order of the District Supervisor of the Alcohol Tax Unit of the Bureau of Internal Revenue of the United States. At the same time, the supervisor denied petitioner's applications for an importer's and a new wholesaler's permit. The supervisor was duly authorized to act in these matters. Section 4(h) of the act authorized an applicant or permittee to appeal to the Circuit Court of Appeals within 60 days after the entry of orders denying or annulling the permits. A petition for appeal was filed within 60 days. The Circuit Court of Appeals dismissed the appeal (*Levers v. Anderson* (10th Cir. 1945), 147 F.2d 547), on the ground that petitioner had failed to exhaust his administrative remedies, since he had not first filed a motion for reconsideration of the supervisor's order as permitted by Treasury regulations. The Treasury regulation at issue there read: "(a) ... Within 20 days after an order is made by the Commissioner or district supervisor revoking a basic permit, the permitee may file an application with such Commissioner or district supervisor, for a reconsideration of such order." (*Levers,* 326 U.S. at 221, 90 L. Ed. at 28, 66 S. Ct. at 73.) The Court held a petitioner need not file an application with the Commissioner or district supervisor before seeking judicial review of the order. (*Levers,* 326 U.S. at 221-24, 90 L. Ed. at 28-30, 66 S. Ct. at 73-74.) The Court reasoned:

> "Whatever might be the case in other circumstances, it is clear that where, as here, judicial review is provided in the Act itself, the petitioner's right of appeal to the courts is to be de-

termined by looking to the statute, the valid regulations promulgated pursuant to it and proven administrative practice throwing light upon their meaning. In construing the Act, however, we must be mindful of the 'long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' [*Myers v. Bethlehem Shipbuilding Corp.* (1938), 303 U.S. 41, 50-51, 82 L. Ed. 638, 644, 58 S. Ct. 459, 463]. But this rule does not automatically require that judicial review must always be denied where rehearing is authorized but not sought. This is shown by our past decisions [*United States v. Abilene & Southern Ry. Co.* (1924), 265 U.S. 274, 280-82, 68 L. Ed. 1016, 1019-20, 44 S. Ct. 565, 567; *Prendergast v. New York Telephone Co.* (1923), 262 U.S. 43, 48-49, 67 L. Ed. 853, 857, 43 S. Ct. 466, 468-69], from which we see no reason to depart. Government counsel, appearing for respondent, do not defend the dismissal of petitioner's appeal on such a sweeping assumption. On the contrary, they assert that motions for rehearing before the same tribunal that enters an order are under normal circumstances mere formalities which waste the time of litigants and tribunals, tend unnecessarily to prolong the administrative process, and delay or embarrass enforcement of orders which have all the characteristics of finality essential to appealable orders." (*Levers*, 326 U.S. at 221-22, 90 L. Ed. at 29, 66 S. Ct. at 73-74.)

The *Levers* Court was not persuaded that "may" means must. Neither are we.

█ Accordingly, we hold *Danison* controlling and decline to follow *Castaneda.* In our judgment the legislature did not require application for rehearing before judicial review may be sought. Thus, the City may seek judicial review even though it did not apply for rehearing with the Commission.

█ Complainants also argue the Commission's order is not final because paragraph eight of the order states the Commission will provide interim relief if the parties fail to agree on interim relief, leaving the order and decision subject to further action and, therefore, not final. While the order does permit further action by the Commission if the parties fail to agree, this does not make the appeal premature. The power which the Commission reserves is over incidental matters not affecting the ultimate rights determined by the order. Such power does not render an order nonfinal or interlocutory. (*Hernandez v. Fahner* (1985), 135 Ill. App. 3d 372, 481 N.E.2d 1004.) The Commis-

sion's order and decision is final for purposes of appeal.

The complainants' motion to dismiss is denied.

II

■ We turn now to the City's challenge to paragraphs four and eight of the Commission's order as void as beyond the relief authorized by the Act. Generally, administrative agencies are limited to the power vested in them by statute. (*Chemetco, Inc. v. Pollution Control Board* (1986), 140 Ill. App. 3d 283, 286, 488 N.E.2d 639, 642.) Acts or orders of an administrative agency which are not authorized by an enabling statute or ordinance are void. (*Weingart v. Department of Labor* (1988), 122 Ill. 2d 1, 17, 521 N.E.2d 913, 920.) But, where there is an express grant of authority there is likewise a clear and express grant of power to do all that is reasonably necessary to execute the power or perform duties specifically conferred by the enabling statute. (*Lake County Board of Review v. Property Tax Appeal Board* (1988), 119 Ill. 2d 419, 427, 519 N.E.2d 459, 463.) Furthermore, the interpretation of a statute must be grounded on the nature and object of the statute as well as the consequences which would result from construing it in one way or another. Legislative intent may be ascertained from the reason and necessity for the act, evils sought to be remedied, and the object and purposes sought to be obtained. (*Trigg v. Sanders* (1987), 162 Ill. App. 3d 719, 727, 515 N.E.2d 1367, 1372.) In addition, our supreme court has found administrative agencies are given wide latitude in fulfilling their duties. (*Lake County Board of Review*, 119 Ill. 2d at 428, 519 N.E.2d at 463.) With these canons of interpretation of agency enabling legislation in mind, we turn to the portions of the order in dispute.

Paragraph four of the Commission's order commands the City to establish a promotional policy for filling vacancies in the position of sergeant which is nondiscriminatory. The City does not dispute the Commission's authority to require this action. The paragraph continues by requiring an impact and validation study of any new promotional examination the City might develop. The City also has no quarrel with this measure. In addition, the Commission requires the parties to agree upon an expert to conduct this study, a provision the City disagrees with. Paragraph eight provides the City and complainants shall agree as to the method for choosing sergeants between the date of the order and completion of the impact and validation study, another provision of the order the City disagrees with. The City argues the contested portions of the Commission's order are not authorized by section 8—108 of the Act (Ill. Rev. Stat. 1987, ch. 68, par.

8–108), which sets forth the relief the Commission is empowered to provide after it finds a civil rights violation. Basically, the City argues the language of section 8–108 deals with relief designed for individual complainants, whereas the Commission's order deals with employment matters broader than providing relief to individual complainants.

The City also maintains the Commission's order puts the complainants in a position beyond what they would have been in absent the discriminatory test, because not only are they given an opportunity to become sergeants, but they are also given an opportunity to compel the City to adopt a particular promotional policy, to approve experts who will be selected to validate an examination, and to approve of the method of filling sergeant vacancies prior to the completion of an impact and validation study. According to the City, this power was never given to white or black officers, but now complainants are given this power and white officers are not. The City claims this does not meet the goal of giving the complainants the same opportunity as white officers, but gives them too much power, in effect making them more than whole. The City claims the Commission's order allows complainants to intervene in the economic and political operation of the City, intervention which our supreme court forbade in *Village of Lombard v. Pollution Control Board* (1977), 66 Ill. 2d 503, 363 N.E.2d 814.

In *Village of Lombard*, the Pollution Control Board tried to adopt regulations dividing Du Page County into nine water treatment regions and require each region to establish a centralized water treatment program. The court held the Environmental Protection Act was not sufficiently broad or specific to authorize the Pollution Control Board to mandate such action. The court looked to the legislative intent of the Environmental Protection Act and found it did not authorize detailed intervention into the economic and political operation of the governmental entities affected. (*Village of Lombard*, 66 Ill. 2d at 505-07, 363 N.E.2d at 815-16.) *Village of Lombard* does not aid the City because the court came to its conclusion after examining the legislative intent of a piece of legislation completely different from the legislation before us. Any finding concerning the legislation in *Village of Lombard* is persuasive only as to that legislation or legislation similar thereto.

The City cites two additional cases, *City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108, 357 N.E.2d 1154, and *Board of Trustees of Police Pension Fund v. Washburn* (1987), 153 Ill. App. 3d 482, 505 N.E.2d 1209. In *City of Chicago*, the court

held absent express statutory authority for an award of attorney fees, the Commission was without power to make such award and its order doing so was void and subject to collateral attack. *Board of Trustees* involved defendant's *authority* to review administrative actions of the Board. The court held section 22—502 of the Illinois Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 22—502) gave defendant specific mandatory instructions as to what an examination of a particular pension fund shall include; the issue was the power to review and reverse the result of an adjudication itself. Both cases are inapposite to the issue before us.

The City states employment policies are promulgated by the City and its civil service commission, and argues the Commission's order allows complainants and the Commission to dictate employment policies to the City. The Commission has the power to enforce the public policies of the Act, however. (*Rackow v. Human Rights Comm'n* (1987), 152 Ill. App. 3d 1046, 504 N.E.2d 1344.) In *Rackow*, the court upheld an award of attorney fees where the plaintiffs had unlawfully refused to lease an apartment to a person who would reside with one or more children under 14 years of age. The attorney fees were found necessary to enforce the public policies of the Act. Under *Rackow*, the Act has policies which the Commission has the power to further. We must determine whether the Commission's order enforces the policies of the Act or goes further and dictates employment policies to the City. In order to determine whether the order is outside the Commission's authority, we must examine the Act itself.

Section 1—102 of the Act (Ill. Rev. Stat. 1987, ch. 68, par. 1—102) states the public policy of this State is:

"To secure for all individuals within Illinois the freedom from discrimination because of race ***.

*** To promote the public health, welfare and safety by protecting the interest of all people in Illinois in maintaining personal dignity, in realizing their full productive capacities, and in furthering their interests, rights and privileges as citizens of this State.

***

*** To establish Equal Opportunity and Affirmative Action as the policies of this State in all of its decisions, programs and activities ***." Ill. Rev. Stat. 1987, ch. 68, pars. 1—102(A), (B), (D).

Section 8—108 of the Act (Ill. Rev. Stat. 1985, ch. 68, par. 8—108) provides as follows:

"Relief; Penalties. Upon finding a civil rights violation, a

hearing officer may recommend and the Commission or any three-member panel thereof may provide for any relief or penalty identified in this Section, separately or in combination, by entering an order directing the respondent to:

(A) Cease and Desist Order. Cease and desist from any violation of this Act.

(B) Actual Damages. Pay actual damages, as reasonably determined by the Commission, for injury or loss suffered by the complainant.

(C) Hiring; Reinstatement; Promotion; Backpay; Fringe Benefits. Hire, reinstate or upgrade the complainant with or without back pay or provide such fringe benefits as the complainant may have been denied.

(D) Restoration of Membership; Admission To Programs. Admit or restore the complainant to labor organization membership, to a guidance program, apprenticeship training program, on the job training program, or other occupational training or retraining program.

(E) Public Accommodations. Admit the complainant to a public accommodation.

(F) Services. Extend to the complainant the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the respondent.

\* \* \*

(I) Posting of Notices. Post notices in a conspicuous place which the Commission may publish or cause to be published setting forth requirements for compliance with this Act or other relevant information which the Commission determines necessary to explain this Act.

(J) Make Complainant Whole. Take such action as may be necessary to make the individual complainant whole \* \* \*."

The Act is remedial in nature. Remedial legislation should be construed liberally to effectuate its purpose. *S.N. Nielsen Co. v. Public Building Comm'n* (1980), 81 Ill. 2d 290, 410 N.E.2d 40.

Section 8—108(J) of the Act gives the Commission discretion to order relief not expressly enumerated in other subsections of section 8—108. Action which makes one "whole" is action which puts the claimant in the position he or she would have been in but for the discriminatory act. (*Clark v. Human Rights Comm'n* (1986), 141 Ill. App. 3d 178, 182, 490 N.E.2d 29, 33 (back-pay awards).) The City claims in applying *Clark* to the instant case, complainants should be put in a position they were in before they took the examination, whereas com-

plainants were never in a position to compel adoption of a particular promotional policy, seek their approval as to experts to validate the examination or the method of filling sergeant positions prior to completion of an impact and validation study. In *Clark*, an employee successfully maintained a racial discrimination suit against his employer. The employee was demoted as a result of his employer's discrimination, and the court found the Commission erred in the back-pay formula as applied and remanded for further hearings. On remand, the Commission awarded back pay to properly bring the employee up to the salary he would have made if the employer had not discriminated against him. (*Clark*, 141 Ill. App. 3d at 185, 490 N.E.2d at 34-35.) The original award applied no meaningful standard, the law's preference for individualized remedy was ignored, and the Commission gave the benefit of the doubt (as to what the employee would have earned) to the wrongdoer. In the instant case, the Commission has ordered relief to bring complainants up to where they would have been had they not been discriminated against by the City, *i.e.*, to give them an opportunity to become sergeants in the City's police department, afford them an avenue to advance names of experts prior to the City's selection, and to suggest or comment on methods for making promotions in the interim period before test validation.

Complainants rely on *Eastman Kodak Co. v. Fair Employment Practices Comm'n* (1980), 83 Ill. App. 3d 215, 403 N.E.2d 1224, *aff'd* (1981), 86 Ill. 2d 60, 426 N.E.2d 877. *Eastman Kodak* involved a dispute between the Commission and Kodak over Kodak's eligibility to bid on State contracts. The main issue was whether Kodak had a sufficient affirmative action program to comply with the properly adopted rules and regulations of the Commission. Kodak argued, as does the City with the Act here, the rules and regulations of the Fair Employment Practices Commission were aimed at preventing group discrimination while its statutory authority was only to prevent individual discrimination. The appellate court examined the purposes of the legislation, which has been rewritten in similar language as section 1−102(A) of the Act (Ill. Rev. Stat. 1987, ch. 68, par. 1−102(A)), and rejected Kodak's argument. The court stated: "We do not believe that one could take *affirmative* action to prevent individual acts of discrimination without taking some positive steps to prevent discrimination to a class of people." (Emphasis in original.) *Eastman Kodak*, 83 Ill. App. 3d at 219, 403 N.E.2d at 1228.

Although *Eastman Kodak* discussed affirmative action, which is not at issue here, the question in that case which we have mentioned in this discussion is similar to the question decided in this issue

of the case before us. Therefore, we adopt the finding of the *Eastman Kodak* court and conclude that prevention of individual acts of discrimination in the factual circumstances of this case cannot be accomplished without taking some positive steps to prevent discrimination to a class of people.

*Brewington v. Illinois Department of Corrections* (1987), 161 Ill. App. 3d 54, 513 N.E.2d 1056, also addresses the City's argument that only individual relief can be ordered by the Commission. *Brewington* involved a Department of Corrections employee who had resigned and then filed a discrimination complaint against her former employer which alleged sexual and racial discrimination. The court in *Brewington* stated: "The protection of civil rights in general is as worthy a goal to be served by a proceeding under the [Human Rights] Act as is the vindication of one particular individual's civil rights." (*Brewington*, 161 Ill. App. 3d at 68, 513 N.E.2d at 1066.) It is clear the Commission may order relief which has class-wide implications.

We find the relief granted by paragraphs four and eight of the Commission's order authorized by the Act.

### III

We turn now to the City's second issue raised on appeal, whether the order is void because the Commission, through paragraphs four and eight of its order, has attempted to delegate to private persons the City's legislative power to make employment-related decisions. The State has the power to appoint public officers, and this power cannot be delegated to a private person or group but must be delegated to a public agency such as a municipal corporation, commission, local board, or public officer. (*People ex rel. Rudman v. Rini* (1976), 64 Ill. 2d 321, 326, 356 N.E.2d 4, 7.) In *Rini*, relied upon by the City, our supreme court struck down a statute which transferred the authority to fill vacancies in county offices from county boards to county central committees of political parties.

 Delegation of power to make the law, including discretion as to what the law shall be, is impermissible, while the conferral of authority or discretion to do that which the legislature might, but cannot as understandingly or advantageously, do itself is permissible. (*Hill v. Relyea* (1966), 34 Ill. 2d 552, 555, 216 N.E.2d 795, 797.) The City contends the relief granted complainants to consent to an impact and validation study expert and to interim procedures for filling vacancies is a grant to private persons to make law. Delegations of legislative power to private persons whose interests may be adverse to the interest of others similarly situated or directly affected by the ex-

ercise of the power delegated is not lawful. *People ex rel. Chicago Dryer Co. v. City of Chicago* (1952), 413 Ill. 315, 323, 109 N.E.2d 201, 205-06.

In *Chicago Dryer Co.*, relied on by the City, the supreme court struck down a statute that required consent of 60% of the abutting property owners of a street before the street's name could be changed. The court concluded the consent requirement gave the property owners unbridled discretion to determine what the law should be. (*Chicago Dryer Co.*, 413 Ill. at 317, 323-24, 109 N.E.2d at 203, 206.) The City also relies on *People v. Pollution Control Board* (1980), 83 Ill. App. 3d 802, 404 N.E.2d 352, *appeal after remand* (1984), 129 Ill. App. 3d 958, 473 N.E.2d 452, where a provision in the Illinois Environmental Protection Act was challenged. The provision stated the Pollution Control Board's statutes and regulations for monitoring noise would not apply to any sporting events endorsed by specified private organizations. The court found the granting of this power constituted an improper delegation of legislative authority. (*Pollution Control Board*, 83 Ill. App. 3d at 804, 809, 404 N.E.2d at 353, 357.) On appeal after remand, however, the same panel of the first district found an amendment which reinforced the exemptions for certain sporting events was constitutional. *Pollution Control Board*, 129 Ill. App. 3d at 963, 473 N.E.2d at 456.

The City also relies on *Brodner v. City of Elgin* (1981), 96 Ill. App. 3d 224, 420 N.E.2d 1176, where a zoning ordinance required the written consent of the owner or his authorized representative to an application to amend the zoning classification of his or her property. The court struck down the requirement as an unlawful delegation. *Brodner*, 96 Ill. App. 3d at 226-27, 420 N.E.2d at 1177-78.

The City argues the case before us involves an unlawful delegation of the power to make law, similar to those delegations struck down in *Rini, Chicago Dryer Co., Pollution Control Board,* and *Brodner.* The City contends complainants are private persons whose interests are adverse to the interests of others seeking promotion to the position of sergeant. The City also argues complainants may withhold consent to an impact and validation study expert, and thereby permanently avoid an impact and validation study and cause a long delay in development of an interim policy for filling vacancies. The likelihood of this result is slight because it is in the best interests of the complainants to facilitate the selection process for sergeants so they may be considered for the position.

█ The Commission notices there is no statute which delegates the choosing of police department examinations to the legislature,

thus there is no legislative authority to be delegated. The City responds our supreme court has held home rule powers give a home rule municipality the power to legislate concerning the appointment and certification of police officers. (*Stryker v. Village of Oak Park* (1976), 62 Ill. 2d 523, 343 N.E.2d 919, *cert. denied* (1976), 429 U.S. 832, 50 L. Ed. 2d 97, 97 S. Ct. 95.) In *Stryker*, the supreme court stated an ordinance enacted by a home rule unit under the grant of power in section 6(a) of article VII of the Illinois Constitution of 1970 supersedes a conflicting statute enacted prior to the effective date of the Constitution. (*Stryker*, 62 Ill. 2d at 527, 343 N.E.2d at 922.) Thus, the City, which is a home rule unit, has the power to legislate concerning the appointment and certification of police officers. Upon analysis of the Commission's order, we find it did not delegate legislative power to complainants.

The City argues if the relief given complainants is not a delegation of legislative power, the relief grants complainants participation in the implementation of City policy, and delegation of such implementation must contain standards to guide the persons charged with the implementation. (*Village of Lombard*, 66 Ill. 2d at 508, 363 N.E.2d at 817.) Upon examination, paragraphs four and eight of the Commission's order contain no discernible standards to guide complainants in exercising the relief given them to agree or disagree to the selection of a validation expert and interim methods for filling vacancies. However, the preciseness of standards required when implementation power is delegated depends upon the complexity of the subject matter and the ultimate objective of the act in question. (*Hoogasian v. Regional Transportation Authority* (1974), 58 Ill. 2d 117, 317 N.E.2d 534.) The subject matter in this case is complex, but precise standards are not required. The objective of the Act is to eliminate racial discrimination. While the Commission might have included a sentence reserving resolution of these matters to it if the parties were unable to agree, as in paragraph eight of its order, the failure to do so does not render these portions of the order void. We conclude the Commission has the power to intervene and will do so if agreement cannot be reached as to the matters involved in paragraphs four and eight of its order. Accordingly, the Commission's order and decision is affirmed.

Affirmed.

LUND and GREEN, JJ., concur.